APPEAL NO. 23-480

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

HALIM KHAN

Defendant-Appellant.

FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

District Court No. 1:20-cr-0007-RVM-2

**OPENING BRIEF OF APPELLANT**

Bruce Berline, Esq.
LAW OFFICE OF BRUCE BERLINE LLC
Second Floor, Macaranas Building, Beach Road, Garapan
PO Box 5682 CHRB
Saipan, Northern Mariana Islands 96950
Telephone: (670) 233-3663
Fax: (670) 233-5262
E-mail: bberline@gmail.com

Attorney for Defendant/Appellant Halim Khan

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.  STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. DEFENDANT'S BAIL STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV. STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

VI. SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VII. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

    A.  THE DISTRICT COURT ERRED WHEN IT ALLOWED
        MR. HOSEN TO TESTIFY ABOUT STATEMENTS MADE
        BY CO-CONSPIRATOR SORIANO . . . . . . . . . . . . . . . . . . . . . . . 30

    B.  THE DISTRICT COURT'S LIMITATION OF
        DEFENDANT'S CROSS-EXAMINATION OF
        OFFICER VERMA ABOUT THE LEGALITY OF
        THE PURPORTED CONTRACT VIOLATED
        MR. KHAN'S CONSTITUTIONAL RIGHTS. . . . . . . . . . . . . . . . . 39

    C.  MR. KHAN'S TRANSLATED STATEMENTS MADE
        DURING QUESTIONING BY SA JONAS WERE
        INADMISSIBLE AND VIOLATED MR. KHAN'S
        SIXTH AMENDMENT RIGHT TO CONFRONTATION
        BECAUSE THE GOVERNMENT FAILED TO CALL
        THE TRANSLATOR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

i

*1.* *SA Jonas' complete lack of knowledge about the translator used the questioning of Mr. Khan made the interpretation inadmissible at trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*2.* *SA Jonas' testimony about statements made through an interpreter violated Mr. Khan's Sixth Amendment right to confrontation.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

D. THERE WAS INSUFFICIENT ADMISSIBLE EVIDENCE AT TRIAL FROM WHICH ANY REASONABLE JUROR COULD HAVE FOUND MR. KHAN GUILTY OF A CONSPIRACY TO DEFRAUD THE UNITED STATES.. . . . . . . 51

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

PROOF OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

# TABLE OF AUTHORITIES

**CASES:**

*Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775 (1987) . . . . . . . . . . 30, 33

*Bullcoming v. New Mexico*, 564 U.S. 647, 131 S.Ct. 2705 (2011) . . . . . . . . . . . 48

*Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1352, (2004) . . . . . . . . . . . 47-50

*Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105 (1974) . . . . . . . . . . . 26, 43-44

*Evans-Smith v. Taylor*, 19 F.3d 899, 908 n.22 (4th Cir. 2004) . . . . . . . . . . . . . . 51

*Lydia v. United States*, 321 F.2d 788 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . 54

*Maryland v. Craig*, 497 U.S. 836, 845 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009) . . . . . . . 48

*Mikes v. Borg*, 947 F.2d 353 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*United States v. Atkinson*, 990 F.2d 501 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . 51

*United States v. Bennett*, 621 F.3d 1131 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . 3

*United States v. Bernard*, 625 F.2d 854 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . 54

*United States v. Bowman*, 215 F.3d 951 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 2

*United States v. Bridgeforth*, 441 F.3d 864 (9th Cir. 2006) . . . . . . . . . . . . . 25, 31

*United States v. Burton*, 324 F.3d 768 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 51

*United States v. Charles*, 722 F.3d 1319 (11th Cir. 2013) . . . . . . . . . . . . . . . 49-50

*United States v. Chung Lo*, 231 F.3d 471 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . 44

*United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007). . . . . . . . . . . . . 2, 26, 43-44

*United States v. Leung*, 35 F.3d 1402 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 54

*United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991) . . . . . . . . . . . . 29, 46-49

*United States v. Orm Hieng*, 679 F.3d 1131 (9th Cir. 2012). . . . . . . . . . . 3, 46, 48

*United States v. Rodriguez-Rodriguez*, 393 F.3d 849 (9th Cir. 2005). . . . . . . 26, 44

*United States v. Romo-Chavez*, 681 F.3d 955 (9th Cir. 2012) . . . . . . . . . . . . . . . 47

*United States v. Saya*, 247 F.3d 929 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Silverman*, 861 F.2d 571 (9th Cir. 1988) . . . . . . . . . . . 30, 33, 35

*United States v. Sineneng-Smith*, 982 F.3d 766 (9th Cir. 2020) . . . . . . . . . . . . . . 3

*United States v. Singh*, 995 F.3d 1069, 1080 (9th Cir. 2021) . . . . . . . . . . . . . . . . 2

*United States v. Thomas*, 453 F.2d 141 (9th Cir. 1971) . . . . . . . . . . . . . . . . . . . 51

*United States v. Torres*, 908 F.2d 1417 (9th Cir. 1990) . . . . . . . . . . . . . . . . 31, 37

**FEDERAL STATUES:**

18 U.S.C. § 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 29

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

48 U.S.C. § 1821(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

48 U.S.C. § 1822 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

48 U.S.C. § 1824 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**COURT RULES:**

Cir. R. 28-2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 4(b)(1)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 28(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Crim. P. 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23, 25, 52

Fed. R. Evid. 801(d)(2)(E) . . . . . . . . . . . . . . . . . . . . . . . . . 25, 30-31

**MISCELLANEOUS**

9th Cir. Model Crim. Jury Instruction 3.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

v

# I. STATEMENT OF JURISDICTION

Pursuant to Fed. R. App. P. 28(a)(4) and Cir. R. 28-2.2, Defendant/Appellant Halim Khan ("Mr. Khan" or "Defendant Khan") demonstrates the jurisdiction of the District Court and this Court by stating as follows:

a.      The District Court exercised subject-matter jurisdiction pursuant to 48 U.S.C. § 1822 and 18 U.S.C. §§ 23 and 3231.

b.      This Court has jurisdiction pursuant to 48 U.S.C. § 1824, 28 U.S.C. § 1291, 48 U.S.C. § 1821(a)  and 28 U.S.C. § 1294.

c.      The District Court's Judgment was filed on March 10, 2023.  1-ER-2. Mr. Khan's Notice of Appeal was filed on March 23, 2023. 4-ER-720. This appeal is timely. *See* Fed. R. App. P. 4(b)(1)(A)(i).

# II. DEFENDANT'S BAIL STATUS

On March 10, 2023, Mr. Khan was sentenced to a two year term of probation by the District Court. 1-ER-2-4. Presently, Mr. Kahn remains out of custody on probation.

# III. STATEMENT OF ISSUES

A.      The District Court erred when it allowed Mr. Hosen to testify about statements made by co-conspirator Soriano.

B.      The District Court's limitation of Defendant's cross-examination of Officer Verma about the legality of the Purported Contract violated Mr.

1

Khan's Constitutional rights.

C.      The District Court's refusal to allow defense counsel to cross-examine Government witnesses about legally binding contracts violated Mr. Khan's Sixth Amendment rights.

D.      The Government's failure to call the translator used by Special Agent Jonas to interview Mr. Khan made the testimony regarding Mr. Khan's oral statement inadmissible and violated Mr. Khan's Sixth Amendment rights.

E.      Whether the District Court erred in denying Defendant' Motion for Acquittal and whether there was sufficient admissible evidence at trial from which any reasonable juror could have found Mr. Khan guilty beyond a reasonable doubt.

## IV.  STANDARDS OF REVIEW

1.      This Court reviews the District Court's decision to admit co-conspirator statements for abuse of discretion. *United States v. Bowman*, 215 F.3d 951, 960 (9th Cir. 2000). This Court review the district court's "factual determination that statements were made in furtherance of a conspiracy for clear error." *Id*.

2.      Alleged violations of the Sixth Amendment's Confrontation Clause are reviewed de novo. See *United States v. Singh*, 995 F.3d 1069, 1080 (9th Cir. 2021); *United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007). The violation is subject to a harmless error standard however which the Government has the burden of showing beyond a reasonable doubt.  *United States v. Saya*, 247 F.3d 929, 937 (9th Cir. 2001)

3.     This Court reviews the District Court's evidentiary rulings as to whether Special Agent Jonas was properly allowed to testify about certain statements allegedly made by Mr. Khan during a Homeland Security Investigation interview, obtained through the assistance of an unknown translator, who did not testify at trial, under an abuse of discretion standard. *United States v. Orm Hieng*, 679 F.3d 1131, 1135 (9th Cir. 2012).

4.     This Court reviews *de novo*, the District Court's ruling on a motion for acquittal and a claim challenging the sufficiency of the evidence supporting an element of an offense. *United States v. Sineneng-Smith*, 982 F.3d 766, 776 (9th Cir. 2020)(Rule 29 motion standard); *United States v. Bennett*, 621 F.3d 1131, 1135 (9th Cir. 2010)(Sufficiency of the evidence standard.

## V.   STATEMENT OF THE CASE

On July 30, 2020, the Government indicted Mr. Khan and two other co-defendants/alleged co-conspirators, Servillana Soriano and Aminul Islam, on the sole count of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371. Indictment, 4 ER 722 (Docket No. 3). On October 5, 2020, the Government filed a Superseding Indictment. 4-ER-722 (Docket No. 32). On January 12, 2021, the Government filed an Amended Superseding Indictment. 4-ER-723 (Docket No. 63). On March 25, 2021, the Government filed a Second Superseding Indictment, adding

Faroque Hosen as a co-conspirator of Mr. Khan, in addition to Ms. Soriano and Mr. Islam. 4-ER-646.

The operative Second Superseding Indictment alleges that Mr. Khan and the others individuals conspired to defraud the United States Citizenship and Immigration Service ("USCIS") by "impeding, impairing, obstructing, and defeating" its "fair and objective evaluation of petitions to classify aliens as CW-1 workers." 4-ER-646-647.

The Government claimed that the alleged conspiracy was a "fraudulent" non-immigrant petition for temporary workers (the "Petition") submitted to USCIS by petitioner RES International LLC ("RES" or the Company). 4-ER-646-647. The Petition sought approval for RES to employ three non-resident alien individuals as "CW-1 workers" in Saipan for a one-year term. *Id*. The Government sought to show that the Petition's representation that an "employer-employee relationship" would exist between RES and the beneficiary under the employment terms set forth in the petition" were false and fraudulent. *Id*. The Government claimed that Mr. Khan had an integral role in getting RES to submit the petition that falsely and fraudulently alleged that the men would be employed by RES full time. The three non-resident alien individuals were Mohammed Rasel Khan, Aminul Islam and Faroque Hosen. Of these three, only Faroque Hosen would testify.

4

In his opening statement, the prosecutor told the jury that it would hear from four witnesses - Special Agent Frederic Jonas, Senior Immigration Services Officer Monica Verma, Faroque Hosen and Malau Ernest. 2-ER-65-69. During the prosecutor's opening statement, the prosecutor discussed USCIS' requirements for submitting a CW-1 petition to USCIS. The prosecutor stated that "[y]ou also must -- generally must submit certain documents, such as employment contracts." 3-ER-65. The prosecutor continued telling the jury that a witness for the prosecution, Ms. Maralouisa Ernest, will testify that "[t]here was a contract purportedly between RES and Kanoa Resort where the Defendant worked. And it said that Kanoa was going to hire these men to work at Kanoa Resort. It was signed by Ms. Soriano and it was signed by the Defendant. And it was submitted as proof that a true employer-employee relationship was going to existent as represented in the petition." 2-ER-68; *See* 4-ER-713-715. The prosecution referred to this document several more times in his opening as a contract. 2-ER-69 ("And they brought him in and they showed him the contract.").

*Special Agent Jonas' Testimony*.

The prosecution first called Special Agent Jonas ("SA Jonas") to the witness stand. SA Jonas is a special agent for Homeland Security Investigations ("HSI"). 2-ER-23. SA Jonas was called to give general background testimony about the case.

5

2-ER-80-95. SA Jonas explained that, in 2017, HSI's investigation discovered that a company called Misamis Construction was recruiting overseas workers from Bangladeshi come to Saipan and work here. 2-ER-82. Misamis Construction used RES to petition these workers to come to Saipan. 2-ER-83.

As part of the investigation, SA Jonas interviewed Richard Soriano, because his name appeared on a petition. 2-ER-83. SA Jonas also interviewed Ms. Servillana Soriano and Mr. Khan. 2-ER-83-84. SA Jonas explained that Richard Soriano is the son of Servillana Soriano. 2-ER-83. SA Jonas claimed that, despite Mr. Soriano signing the petitions on behalf of RES, Ms. Soriano is the owner and operator of RES. 2-ER-83. However, the Petition at issue here was signed by Mr. Soriano. 4-ER-651-660. Mr. Soriano also appeared to sign all other documents on behalf of RES contained in the Petition, including, among other documents, RES' Annual Limited Liability Report, which lists him, and only him, as a member of the LLC. 4-ER-662, 670. The Petition also includes RES' Operating Agreement which states that Mr. Soriano owns one hundred percent of RES. 4-ER-672.

SA Jonas then testified that he a copy of the Petition from USCIS, as well as USCIS's entire WAC file. 2-ER-84-85. The Government moved to admit the WAC file and the prosecution passed the witness, reserving a right to re-call SA Jonas later in its case in chief. 2-ER-95.

6

*Senior Immigration Services Officer Monica Verma.*

The Government next called Senior Immigration Services Officer Monica Verma. Officer Verma did not testify as an expert witness. 2-ER-125. Officer Verma testified generally about the many requirements needed to apply for CW-1 status with USCIS and discussed the documents contained in the WAC file. 2-ER-100-135. Specifically, Officer Verma testified that in order to obtain a CW-1 permit, USCIS requires, among other things, a legitimate employer-employee relationship between the petitioner and the beneficiaries. 2-ER-100-101. USCIS wants to make sure that the petitioner will be paying the workers, and has the ability to hire, fire and control the work of the beneficiary. 2-ER-104. Officer Verma testified that USCIS looks for contracts supplied with the petition to determine the existence of an employer-employee relationship. 2-ER-104. She explained that "we want to see contracts between the petitioner and the beneficiary, the petitioner and possibly a third-party, if a third-party is involved. . ." 2-ER-104.

Once a petition is submitted, USCIS may approve it or may take other action such as send the petitioner a Request for Evidence ("RFE"). 2-ER-107-108. A RFE simply asks the petitioner for additional evidence needed to supplement the petition. 2-ER-108.

7

Officer Verma also testified about manpower service companies. 2-ER- 112. Officer Verma stated that manpower service companies must provide USCIS with "contracts between the petitioner and whoever the petitioner is placing them to work at." 2-ER-113.

Officer Verma then began reviewing the different documents contained in the WAC file with the prosecutor. 2-ER-114. Officer Verma identified what she called the "employment contract" between the petitioner and employee, contained in the Petition, and explained that it contained the employment date and the rate of pay. 2-ER-126; 4-ER-683. These employment contracts contained a signature above Richard Soriano's signature block as a member of RES, LLC. 4-ER-683-692.

Officer Verma then reviewed the Certificate of Employment contained in the Petition and stated that such certificates were not required by USCIS. 2-ER-127; 4-ER-696.

Finally, Officer Verma reviewed the RFE in contained in the WAC file. 2-ER-127; 4-ER-701. Officer Verma testified that the RFE was requesting additional evidence from the petitioner regarding evidence to support the employer-employee relationship between the beneficiaries and the manpower service company. 2-ER-127-128. She testified again that they are looking for "a third party contract." 2-ER-128. The RFE language states that "USCIS must determine if you have the right to control

8

each employee through evidence that describes the following," and then the RFE contains a list of requirements needed to show a right of control. 4-ER-703. The RFE then requests among other documents, "valid contracts. . . that establishes that while your employees are placed at the third party work site, you will continue to have the right to control your employees." 4-ER-704.

Officer Verma then reviewed the RES' response to the RFE, which again appeared to be signed by Richard Soriano as well as the document entitled "Standard Terms and Agreement" that was attached to the response. 2-ER-129-130; 4-ER-709-715. After reviewing the document attached to the response (the "Purported Contract;" 4-ER-713), Officer Verma stated that the document is a "contract between the petitioner and the third party location." 2-ER-131. Officer Verma then explained why it is a contract by stating, "it's identifying who is going to be working at that third-party location under the contract, how much they're going to be paid and additional agreements that the petitioner and the third-party location has." 2-ER-131. At that point the defense objected to Officer Verma's testimony characterizing the document as a contract without any foundational testimony or proof that it is actually a legally binding contract. 1-ER-75, 2-ER-131. The District Court overruled defense's objection and allowed Officer Verma's testimony on the validity of a contract. 1-ER-76, 2-ER-132.

9

On cross examination, Officer Verma went through the time line of certain documents contained in the WAC file. 2-ER-151. Officer Verma testified that:

(1) the Petition was signed on August 11, 2018 (2-ER-152, 4-ER- 652);

(2) USCIS received the Petition on August 17, 2018 (2-ER-152);

(3) USCIS issued an RFE on October 31, 2018 (2-ER-154-155, 4-ER-701);

(4) USCIS received a response to the Request for Evidence , dated January 23, 2019 (2-ER-155-157; 4-ER- 709); and,

(5) the Purported Contract, was executed by the parties on September 30, 2018, about one month prior to USCIS issuing the Request for Evidence. 2-ER-156, 4-ER 710-715.

Thereafter, in response to both the prosecution's and Officer Verma's continual referral of the document as a contract, as well as Officer Verma testimony regarding the need for a contract to establish an employee-employer relationship, counsel for the defense began to question Officer Verma about the Purported Contract. 2-ER-162. When counsel asked Officer Verma if a contract is a mutual obligation between parties, the prosecution objected to the question. 1-ER-43, 2-ER-162. The District Court sustained the objection. *Id*.

During additional questioning, Officer Verma again stated that there must be a "valid contract" to establish the employer-employee relationship. 2-ER-164. Officer

Verma also admitted that if a document did not contain a date to start work and a date to end the employment, that USCIS would not consider a document to be a valid contract. *Id*.

Finally, Officer Verma testified that a person who is in the United States illegally, without any immigration status, must leave the United States. 2-ER-173. She also stated that such person will also be subject to a statutory ban that will prevent that person from returning to the United States. 2-ER-168. The length of the statutory ban increases depending upon how long the person remained in the United States without proper status. 2-ER-169. At the time the Petition was submitted to USCIS, all three men, Aminul Islam, Faroque Hosen and Mohammed Rasel Khan, were out of status out of status 2-ER-265-166, 181-126.

*The Purported Contract.*

The Purported Contract was executed on September 30, 2018. 4-ER-715. The Purported Contract stated Kanoa Resort would RES would supply pre-screened workers to Kanoa Resort should it so require workers, with Kanoa having the final say on the selection of such personnel. 4-ER-713 (General Provisions). The Purported Contract, on its face, did not obligate Kanoa to any services from RES. *Id*.

11

*Faroque Hosen*

The Government next called Faroque Hosen. 2-ER188. Mr. Hosen plead guilty to defrauding the United States and was testifying in hopes of getting a reduced sentence from the District Court as well as a T-visa from the Government which would give him a pathway to citizenship and allow him to stay in the United States. 2-ER-190, 194-195. The Government also provided Mr. Hosen with employment authorization from Homeland Security to allow him to work in the United States. 2-ER-195-196.

During the Government's direct examination, Mr. Hosen testified that he first came to Saipan in September, 2016 to work for Misamis Construction. 2-ER-197. Aminul Islam helped him obtain a visa to come to Saipan. 2-ER-198. Mr. Aminul Islam is the brother of Defendant Khan. *Id*. Mr. Hosen worked for Misamis Construction for a little over five months. 2-ER-199. Mr. Hosen testified that eventually there was no more work for him at Misamis Construction. *Id*. When Mr. Hosen's immigration status expired in August of 2017, he stated he spoke to Mr. Khan about getting another CW-1 Visa. 2-ER-200. Mr. Khan simply told him there was a processing fee to renew the CW-1 visa. 2-ER-201. Mr. Khan said nothing more to Hosen. *Id*.

Then, in 2018, Mr. Hosen obtained a job offer and again asked Mr. Khan if he could get his CW-1 renewed. 2-ER 205. Sometime in 2018, Mr. Khan "offered" Ms. Soriano to Mr. Hosen. 2-ER-205. Mr. Khan also mentioned to Mr. Hosen that he would see what he can do and told Hosen to fill out paperwork. 2-ER-149. Mr. Khan did not discuss any cost of the CW-1 petition with Mr. Hosen. 2-ER-207. Thereafter, Mr. Hosen went to Ms. Soriano's residence and met with her. *Id*. Mr. Aminul Islam helped Mr. Hosen get to Ms. Soriano's residence. *Id*. Mr. Khan was not present at that meeting.

Thereafter, the prosecution asked Mr. Hosen about what Ms. Soriano told him. The prosecution specifically asked what Ms. Soriano told Mr. Hosen about the CW-1 Visa at that meeting. 2-ER-207. Defense counsel objected on the grounds of hearsay. 1-ER-47-48, 2-ER-207-208; 2-ER-139-140(Discussion with Court regarding co-conspirator statements and Defense's supplemental brief on co-conspirator statements (ECF No.214, 4-ER 726). The District Court summarily overruled the objection with no discussion from the prosecution. 1-ER-48, 2-ER-208. Mr. Hosen then stated that Ms. Soriano told him that "she can help me to get a new CW-1 Visa, but that there's no available job and it's going to cost about $900 to $950." *Id*.

Thereafter, the prosecutor showed Mr. Hosen the janitorial certificate attached to the Petition. 4-ER-698. Mr. Hosen said what the document said was not true

13

because he never worked as a janitor for Misamis Construction. 2-ER-217-218. When asked by the prosecutor if he had seen this document before, Mr. Hosen stated that he had, but explained that the first time he had ever seen this document was when he was at the office of Homeland Security. 2-ER-218.

Mr. Hosen then explained that he met with Ms. Soriano a few more times. 2-ER-219-220. Again, the prosecutor asked Mr. Hosen about what Ms. Soriano said to him during at one of those meetings. 2-ER-220. Mr. Hosen said " She -- she told me if I want to work, I can work for a couple of days. Manpower --" 2-ER-220-221. At that point, defense again objected on the basis of hearsay. 1-ER-52, 2-ER-221. The District Court overruled the objection. 1-ER-52, 2-ER-221. Mr. Hosen continued, telling the jury that Ms. Soriano also told him that "[i]f I -- if I like to work, I can work. She mentioned that she will give me $9 an hour." 1-ER-52, 2-ER-221.

Finally, in wrapping up his direct examination, the prosecutor again asked "[d]id Ms. Soriano ever tell you what you would have to do if there was no work?" 1-ER-55-56, 2-ER-223-224. The defense again objected on grounds of hearsay, which the trial court overruled. *Id*. Mr. Hosen stated that Ms. Soriano offered him work for a manpower agency for $9 dollars an hour on Capitol Hill. 1-ER-56, 2-ER-224.

During cross-examination, Mr. Hosen stated that he met with Special Agent Jonas on June 29, 2020. 2-ER-231. During that June 29th meeting, Mr. Hosen did not

mention or discuss any type of verbal contract between Mr. Khan and himself. 2-ER-231. However, after meeting with Special Agent Jonas, Mr. Hosen met with an attorney, Pam Brown, to discuss T-Visas. 2-ER-231-232. Mr. Hosen stated that it was well known in the Bangladesh community that Ms. Brown gets T-Visas for people and he knew that Ms. Brown could get him a T-Visa. 2-ER-233. Mr. Hosen learned from talking with Ms. Brown that a T-Visa is a pathway to United States citizenship and that he could obtain a T-Visa by cooperating with the United States Government. 2-ER-233-234. Mr. Hosen believed that he would get a T-Visa if he was a victim of someone cheating him out of money. 2-ER-235. At the time of trial, Mr. Hosen's T-Visa was pending approval and he believed that the federal government, specifically USCIS, was responsible for its final approval. 2-ER-236.

On July 21, 2020, after his meeting with Attorney Brown, Mr. Hosen met with SA Jonas again. 2-ER-237, 241. At that meeting, Mr. Hosen told SA Jonas, for the first time ever, that he had a verbal contract with Mr. Khan for $8,000.00. 2-ER- 237. Thereafter, Special Agent Jonas drafted a statement for Mr. Hosen to sign under penalty of perjury. 2-ER-237-238. Mr. Hosen understood the meaning of signing a document under penalty of perjury. 2-ER-239. Moreover, SA Jonas specifically warned Mr. Hosen that lying to a federal agent about a material fact is a federal crime. 2-ER-240. Mr. Hosen, after reading and understanding the statement, signed the

statement under penalty of perjury. 2-ER-239.

Mr. Hosen's statement included the following statement "I, Faroque Hosen, had a verbal contract with Halim Khan for $8,000 to obtain my CW-1 with Misamis Construction." 2-ER-239. Mr. Hosen admitted that this statement was an outright lie, and that he intentionally lied to SA Jonas. 2-ER-239-340. Mr. Hosen admitted that he maintained that lie for about a year and a half before telling the prosecutor that he intentionally lied about the existence of a contract about a month prior to trial. 2-ER240. The truth was that there was never a $8,000 contract. 2-ER-241.

During his July 21st meeting with SA Jonas, Mr. Hosen told him that "I believe that because I did not pay Halim Khan all of the 8,000 is why I lost my job and was not renewed for a CW-1." 2-ER-241. This statement was also set forth in Mr. Hosen's written statement signed under penalty of perjury. *Id*. This statement was also a lie. *Id*.

Mr. Hosen also lied when he told Special Agent Jonas that Halim Khan warned him not to say anything about the $8,000.00 contract. 2-ER- 242-244. This lie was also contained in Mr. Hosen's sworn statement. *Id*.

Mr. Hosen also admitted committing fraud when he submitted a fake document, a taxi certificate, to USCIS. 2-ER-251. Defense counsel then asked: "What about the fake janitor certificate? You knew about that, right?" Mr. Hosen replied, "Not me".

16

*Id*. Mr. Hosen then reiterated that he first saw this certificate during his first interview at the Homeland Security Office. 2-ER-251-252. However, Mr. Hosen changed his testimony when confronted with his June 29th sworn statement that contained a handwritten edit that said "Aminul Islam provided this document to me, which I submitted to RES." 2-ER-252-260. Mr. Hosen admitted that he handwrote, as well as initialed, that edit in his sworn statement. 2-ER-260-261. He then finally admitted that he provided the fake janitorial certificate to RES. 2-ER-261-262. The record contains no evidence that anyone other than Mr. Hosen knew the certificate was fake. Hosen's testimony directly contradicted his prior testimony, on direct examination, when he told the prosecutor that the document was never shown to him and that he had never seen the fake janitorial certificate until he was interviewed by HSI. 2-ER-217-218.

On re-direct, the prosecution questioned Hosen further. 2-ER-271. The prosecution asked Mr. Hosen about money he said he gave Mr. Khan. *Id*. Mr. Hosen said that was for a plane ticket and processing fees. *Id*. The prosecutor, referencing the lie that Mr. Hosen told during cross, asked Mr. Hosen were he came up with the $8,000 dollar figure. 2-ER-273. Mr. Hosen said he just guessed. 2-ER-273, 277.

Thereafter, on re-cross-examination, Mr. Hosen explained that the $1,960.00 he gave Mr. Khan was for visa and embassy fees and a plane ticket. 2-ER-278-279.

Mr. Hosen admitted it was a reimbursement. 2-ER-280.

*Maralouisa Ernest*

The Government's next witness was Ms. Maralouisa Ernest. 2-ER-305. Ms. Ernest is the Vice President of Human Resources for Asia Pacific Hotels, the company that runs Kanoa Resort where Mr. Khan worked. 2-ER306-307. Ms. Ernest said that Mr. Khan speaks English. 2-ER-311.

Ms. Ernest interviewed Mr. Khan about the Purported Contract. 2-ER- P. 256, 4-ER-713. The interview was conducted in January, 2021, some five months after Mr. Khan's employer knew about his indictment. 3-ER-364-365. During direct examination of Ms. Ernest about the Purported Contract, the Prosecution repeatedly referred to the document as a "contract" despite Ms. Ernest referring to it as an agreement. 2-ER-314 ("So you had this contract with you?," "Did you ask him for the contract?," and "your interview was about his contract with Mr. Khan?").

Later, defense counsel objected to the prosecution's continual reference and implication that the document at issue is a contract. In response, the prosecution stated that "it definitely is not a legal contract" and denied trying to "couch is as a legal contract." 2-ER-339. In response, the Court asked the parties if there could be a stipulation to that effect. 2-ER-340. During the discussion about a potential stipulation, the Court, itself told the jury that "it is a contract, though." *Id*. Defense

counsel was willing to stipulate that the Purported Contract itself includes the term "contract" but wanted the prosecution to stipulate that is was not a legally binding contract. *Id*. The prosecution refused to admit that the document was not a legally binding contract. 2-ER-340-341. The prosecution continued to use the term contract in his questioning of Ms. Ernest. *See e.g.* 2-ER-345.

Mr. Ernest testified that, during the January, 2021 interview, she asked Mr. Khan if his signature was on the Purported Contract. 2-ER-331. Ms. Ernest said that Mr. Khan did not directly answer the question. 2-ER-331. However, Ms. Ernest asked Mr. Khan if he was authorized to sign, and Mr. Khan said no. 2-ER-331-332. Ms. Ernest, herself, testified that Mr. Khan was not authorized to enter into contracts regarding the employment of CW-1 workers. 2-ER-344-348.

On cross-examination, Ms. Ernest admitted that she never asked Mr. Khan if he thought, at the time the Purported Contract was signed, that he had authorization to sign such a document. 3-ER-374. She also admitted that asking that specific question could be the better question to ask Mr. Khan. 3-ER-374. But Ms. Ernest never asked Mr. Khan if he thought that he had authority to sign such a document at the time the Purported Contract was signed. 3-ER-375-376. Ms. Ernest also admitted that the hotel properties, which included the Kanoa Resort, engages with manpower agencies. 3-ER-358. Mr. Ernest testified that Mr. Khan had been an exemplary

19

employee earning multiple awards and accolades. 3-ER-353-355.

*Recall of SA Jonas*

Finally the prosecution recalled SA Jonas to testify about his June 11, 2020 interview of Mr. Khan. 3-ER-388-389. For the interview, SA Jonas used interpreter services provided by a private company over the telephone. 3-ER-390. SA Jonas did not remember which company provided the interpretation. 3-ER-391. SA Jonas stated that he used a Bengali translator, translating over the phone, to translate the entire conversation between him and Mr. Khan, which lasted about three hours. 3-ER 390-391, 397. SA Jonas does not speak Bengali. 3-ER-391. SA Jonas provided Mr. Khan with a statement of rights form which set forth all the standard Miranda rights. 3-ER-392. This form was translated for Mr. Khan by the translator over the phone. *Id.*

At this point, defense counsel objected to the Government eliciting testimony from SA Jonas about Mr. Khan's statements made through a translator, without the Government calling the translator as a witness, in violation of Mr. Khan's Sixth Amendment right to confront witnesses against him. 1-ER-16-17, 3-ER-393-394, 404. The District Court overruled defense's objection. 1-ER-17, 3-ER-394.

Despite SA Jonas questioning Mr. Khan for about three hours, there was no evidence in the record that the questioning was recorded or transcribed. The prosecution did not enter, or even attempt to enter, any statement of Mr. Khan

20

obtained from SA Jonas' questioning. Thus, SA Jonas testified, for the most part, from his memory, roughly summarized what Mr. Khan said during the 2020 interview. 3-ER-398.

SA Jonas stated that Mr. Khan said he was familiar with Mohammad Rasel Khan, Aminul Islam, and Faroque Hosen. Mr. Khan picked Ms. Soriano out of a photo lineup and said that he knew her. 3-ER-399-400. and that Mr. Khan approached Ms. Soriano to help the three men petition for a CW-1 permit through RES. 3-ER-400. Mr. Khan told Special Agent Jonas that Ms. Soriano told him that the men needed to pay a fee for the petition. *Id*. Finally, Special Agent Jonas explained that he believed Mr. Khan wanted his family to get a CW-1 and that Soriano would petition them and give them work otherwise they could find work elsewhere. 3-ER-402.

On cross-examination, SA Jonas admitted that he had no information about the translator he was using to interview Mr. Khan, not even the translator's name. 3-ER-48. SA Jonas also admitted that he had no information about the translator's qualifications. 3-ER-408, 351. SA Jonas explained that he did not ask the translator for any such information because it was not his position make such inquiries and had no concerns about translators. 3-ER-408-410. The Government did not call the translator as a witness.

21

*Defendant's Rule 29 Motion for Acquital.*

After the Government rested, the defense moved for judgment of acquittal pursuant to Fed. R. Crim. P. 29(a). 1-ER-21, 3-ER-426. Part of Mr. Khan's argument was that the Government failed to prove that Mr. Khan was part of any alleged conspiracy or that there was sufficient evidence to show that Mr. Khan willfully participated in an unlawful plan to defraud the government. 3-ER 425-433. The Government responded generally that "the evidence in total from all the exhibits admitted, the witnesses' testimony, Mr. Khan's *"admission to the submission of a fraudulent document as part of the conspiracy"* as well as the fraudulent documents contained in the Petition is enough to defeat the Defendant's motion. 3-ER-428-429 (emphasis added).

The Court asked the prosecutor to identify which witnesses established Defendant's willfulness. 3-ER-428-429. The prosecutor told the Court: "Your Honor, there's not going to be any direct will – I mean, his willfulness is shown by the fraudulent document." 3-ER-429.

In response to the Government's argument that the wilfullness is shown by the fraudulent document(meaning the Purported Contract), the Defense pointed out that, even if the Purported Contract was fraudulent - which there is no evidence of, the document could not be evidence of a conspiracy to defraud the United States.  3-ER-

22

430. The Petition was signed on August 11, 2018 and received on August 17, 2017. 3-ER-430. Attached to the Petition was a contract for employment between RES and Faroque Hosen. *Id*. Thereafter, the Purported Contract was signed on September 30, 2018. *Id*., 4-ER-715. More than a month later, on October 31, 2018, USCIS issued a request for evidence. 3-ER-430, 4-ER-701. The alleged contract was signed before USCIS even thought about a RFE. So the alleged contract could not be evidence of Mr. Khan's willfulness unless he was able to predict the future – that USCIS would issue an RFE so it would sent to USCIS. 3-ER-371-372. Additionally, the Defense argued that there is no evidence that the Purported Contract is a valid contract, which, pursuant to Officer Verma's testimony, is required by USCIS. 3-ER-372.

The prosecutor's response was that the date of the contract was an admitted forgery. 3-ER-431. The prosecutor continued to argue that there is evidence showing that Mr. Khan and others are "sophisticated enough to backdate it." *Id*. The prosecutor argued that it is a fair inference from the evidence for the jury to determine that the document was created after the RFE was received and that the document was then backdated. 3-ER- 431-432. The District Court agreed that it would be reasonable for the jury to infer that the document was backdated and denied the Rule 29 motion. 3-ER-432.

23

After the Rule 29 Motion was denied, the defense called several witnesses. The first witness, Mr. Guang Song, was dismissed after a stipulation was reached by the parties. The parties stipulated that Mr. Khan had a history of purchasing thousands of dollars from Mr. Song's store, Pacific Hardware, and that the purchase was based solely on Mr. Khan's signature. Mr. Khan's signature would be sufficient for Kanoa to pay the bills without question. 3-ER-451-452.

The next witness for the defense was Honesto Sevida. 3-ER-453. Mr. Sevida worked for Chong's air conditioning and testified that he knew Mr. Khan worked for Kanoa Resort and that Mr. Khan was authorized come into the store and purchase equipment on behalf of Kanoa Resort simply by signing his name on behalf of Kanoa Resort. 3-ER-456-459.

The Defense then called Gocylyn Flores. 3-ER- 462. Ms. Flores testified, among other things, that Mr. Khan's signature was required to approve a pay raise requested by Misimis Construction in 2016 for out-sourced workers supplied to the Kanoa Resort by Misamis Construction. 3-ER-468-475, 4-ER-7-8-719.

The final defense witness was Wendi Herring. 3-ER-502. Ms. Herring testified about Mr. Khan's oversight of a major renovation of the Kanoa Resort done while she was the general manager. 3-ER-506. Ms. Herring testified that the renovation occurred in 2016 or 2017 and need outsourced labor in order to undertake the

24

renovations of the hotel's 152 rooms. 3-ER-508. Ms. Herring stated Mr. Khan had the authority to assemble of team of Kanoa employees as well as out-sourced workers to handle the renovation. 3-ER-508. Ms. Herring stated that Mr. Khan chose RES and Misamis Construction to handle the outsourced labor needs for the renovation. 3-ER-509. Ms. Herring stated that Mr. Khan had broad authority to seek out the labor that he believed he needed to fill certain labor needs. 3-ER-514.

Thereafter, the defense renewed its Rule 29 motion for acquittal, which the Court denied, and the defense rested. 3-ER-525-527. Following closing arguments and instructing the jury, deliberations commenced and the jury found Mr. Khan guilty of conspiring to defraud the United States. 3-ER-636. Thereafter, Mr. Khan was sentenced to a term of probation. 1-ER-2.

## IV. SUMMARY OF THE ARGUMENT

First, the Court erred when it allowed Mr. Hosen to testify statements made by a co-conspirator, Ms. Soriano. In order to properly admit a co-conspirator's statement, the prosecution must point to preliminary facts that prove, by a preponderance of the evidence, that "(1) there was a conspiracy, (2) the defendant and the declarant were participants in the conspiracy, and (3) the statement was made by the declarant during and in furtherance of the conspiracy." *United States v. Bridgeforth*, 441 F.3d 864, 869 (9th Cir. 2006), *citing* Fed.R.Evid. 801(d)(2)(E).

25

Here, Mr. Hosen testified that about what Ms. Soriano told him in several meetings he allegedly had with her. Defense counsel objected on the grounds of hearsay to each statement testified to by Hosen. Each objection by defense counsel was overruled by the District Court. At no time, did the prosecution even attempt to provide the District Court with the necessary showing of preliminary facts needed to admit a co-conspirator's statement. Nor did the District Court, *sua sponte*, make any factual finding of the existence of the required elements of a conspiracy. The District Court simply overruled Defendant's objections and allowed Mr. Hosen to testify about what Ms. Soriano, allegedly, told him. The admission of these statements into evidence at trial was error.

Second, the District Court erred when it prevented defense counsel from questioning Senior Immigration Services Officer Monica Verma about whether the Purported Contract was a legally sufficient contract. Officer Verma was called by the Government to explain to the jury what a CW-1 petition is and what is needed to have USCIS grant such a petition. "Effective cross-examination is critical to a fair trial because '[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.'" *United States v. Larson*, 495 F.3d 1094, 1102 (9th Cir. 2007) *quoting Davis v. Alaska*, 415 U.S. at 316, 94 S.Ct. 1105. However, "a limitation on cross examination does not violate the Confrontation

Clause unless it limits relevant testimony and prejudices the defendant." *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 856 (9th Cir. 2005). Here, the District Court limited defense counsel from obtaining relevant testimony that resulted in prejudice to Mr. Khan.

Officer Verma testified about the petition filed in this matter. She noted that USCIS received the petition but also, later, sent RES a Request for Evidence. Part of the RFE was to provide additional information to establish the employer-employee relationship that the petition was based upon and to show that the petitioner had sufficient control over the beneficiary/employee.

Officer Verma testified that in order to establish the employee-employer relationship needed to have USCIS grant the petition, and to satisfy USCIS' request for additional evidence, the petitioner needs to submit a valid contract to USCIS.

RES received the RFE and responded to the request from USCIS. As part of RES' response, a document, the Purported Contract was attached to the response. Officer Verma testified that this Purported Contract was a contract, the implication being that such "contract" met USCIS' requirements for establishing a employer-employee relationship. Accordingly, if the Government can show that the Purported Contract is fraudulent, then the Government can argue that Mr. Khan's fraudulent contract interfered with USCIS's legitimate function because it relied on the contract

27

to grant the Petition.

Accordingly, after Officer Verma testified that what the USCIS depends on is a "valid contract," it became crucial for the defense to show that the Purported Contract was not a valid contract in the legal sense. When defense counsel attempted to delve into the subject of a legal contract on cross-examination, the prosecution's objections were sustained by the District Court and counsel was prevented from exploring the matter. Without being able to challenge Officer Verma's characterization of the Purported Contract, Officer Verma was allowed to characterize as meeting the requirements of USCIS in showing the employer-employee relationship. This restriction of relevant cross-examination greatly prejudiced Mr. Khan and deprived him of his Constitutional rights.

Third, the District Court further erred in allowing Special Agent Jonas to testify about the conversations between him and Mr. Khan because Special Agent Jonas used a translator, who the government never called to testify. Special Agent Jonas did not speak Bengali, and so he used a translator, who was translating over the phone, to assist with the interview. Special Agent Jonas knew nothing about this translator. He did not know the translator's qualifications, or proficiency level, he did not even know the translator's name.

28

Because Special Agent Jonas knew nothing about this translator, he could not demonstrate that the translator accurately and reliably translated during the interview and thus, the translator could not be deemed a language conduit under *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991). Special Agent Jonas' testimony about what was said during the interview should have been excluded under *Nazemian* and its progeny, because it was inherently unreliable.

Additionally, given the government's failure to call the translator as a witness, Special Agent Jonas' testimony about what Mr. Khan told him during his interview with Special Agent Jonas was a violation of Mr. Khan's constitutional rights pursuant *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1352, (2004) and its progeny.

Fourth the Government introduced insufficient evidence at trial for any reasonable trier of fact to find Mr. Khan guilty beyond a reasonable doubt of conspiracy to defraud the United States Government in violation 18 U.S.C. § 371. The Government must prove beyond a reasonable doubt that two or more persons agreed to deceive and cheat USCIS and that Mr. Khan knowingly became a member of the conspiracy and intentionally participating in it. The Government must also prove a overt act.

However, Mr. Khan asserts that the Government failed to prove that there was an actual agreement to cheat and deceive the USCIS in this matter. Moreover, Mr.

29

Khan asserts that the Government failed to show that he knew of the conspiracy and that he willingly participated in it. Accordingly, Mr. Khan's conviction must be vacated and this Court must enter a judgment of acquittal.

## VII. ARGUMENT

A.   THE DISTRICT COURT ERRED WHEN IT ALLOWED MR. HOSEN TO TESTIFY ABOUT STATEMENTS MADE BY CO-CONSPIRATOR SORIANO.

The District Court erred when it ruled that Mr. Hosen's testimony about what Ms. Soriano told him during several meetings he had with her was admissible under Federal Rule of Evidence 801(d)(2)(E), without making the requisite finding under the applicable standard for admitting statements of co-conspirators into evidence. 2-ER-207-208, 220-224. Federal Rule of Evidence 801(d)(2)(E) states that a statement made by a co-conspirator of a party, is not hearsay if . . . "[t]he statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). However, in order for such a statement to be admissible, the Government must have prove, by a preponderance of the evidence, the defendant's "knowledge of and participation in" the alleged conspiracy at issue. *United States v. Silverman*, 861 F.2d 571, 576. (9th Cir. 1988), *citing Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 2778 (1987).

30

Thus, for the District Court to properly admit a co-conspirator's statement, the prosecution must point to preliminary facts that prove, by a preponderance of the evidence, that "(1) there was a conspiracy, (2) the defendant and the declarant were participants in the conspiracy, and (3) the statement was made by the declarant during and in furtherance of the conspiracy." *United States v. Bridgeforth*, 441 F.3d 864, 869 (9th Cir. 2006), *citing* Fed.R.Evid. 801(d)(2)(E). "In determining whether a conspiracy exists, the district court may consider the coconspirator's statements themselves, but those statements, alone, may not conclusively establish the existence of that conspiracy." *United States v. Torres*, 908 F.2d 1417, 1425 (9th Cir. 1990)

During the direct examination of Mr. Hosen, the prosecutor asked him what Ms. Soriano told him about the CW-1 Visa at a certain meeting he had with Ms. Soriano. 2-ER-207. Defense counsel objected on the grounds of hearsay. 2-ER-207-208. The District Court summarily overruled the objection, without argument or discussion from the prosecution, stating that "[t]his is statements made at the time the event occurred and during the conspiracy itself, and so, it is not hearsay under 801(d)(2)." 2-ER-207. Thereafter, Mr. Hosen stated that, during that meeting, Ms. Soriano told him that "she can help me to get a new CW-1 Visa, but that there's no available job and it's going to cost about $900 to $950." 2-ER-208. Thereafter, Mr. Hosen testified that he met with Ms. Soriano several more times. 2-ER-219-220. The

31

prosecutor again asked Mr. Hosen about what Ms. Soriano said to him during a subsequent meeting. 2-ER-220. Mr. Hosen said, "She – she told me if I want to work, I can work for a couple of days. Manpower –." At that point, defense interrupted and again objected on the basis of hearsay. 2-ER-220-221. The District Court, again, overruled the objection, stating that "this was at the time the meeting occurred in 2018, correct? If so, the objection's overruled." 2-ER-221. Again, the prosecution made no attempt to justify the admission of the co-conspirator's statement. Mr. Hosen then continued, saying that Ms. Soriano told him that "[i]f I -- if I like to work, I can work. She mentioned that she will give me $9 an hour." 2-ER-221.

Finally, in wrapping up his direct examination, the prosecutor again asked, "[d]id Ms. Soriano ever tell you what you would have to do if there was no work?" The defense's objection was summarily overruled. 2-ER-223-224. Mr. Hosen stated that Ms. Soriano offered him work for a manpower agency for $9 dollars an hour on Capitol Hill. 2-ER-224.

Here, the prosecution never even attempted to meet its burden required to admit these statements made by co-conspirator Soriano. Moreover, the District Court failed to provide an adequate factual basis when it admitted Ms. Soriano's statements. Accordingly, the District Court admitted the statements of Ms. Soriano without any specific finding that the prosecution had met the applicable standard for admission

as set forth in *Bourjaily v. United States* and its progeny.

The Ninth Circuit has warned district courts that "statements of co-conspirators are inherently unreliable" and trial courts must keep that in mind when evaluating whether the prosecution has made the requisite showing to allow such statements into evidence. *United States v. Silverman*, 861 F.2d at 578. The *Silverman* Court specifically noted that "'co-conspirator statements . . . often have been considered to be somewhat unreliable. It has long been understood that such statements in some cases may constitute, at best, nothing more than the `idle chatter' of a declarant or, at worst, malicious gossip.'" *United States v. Silverman*, 861 F.2d at 578 *quoting Bourjaily*, 107 S.Ct. at 2790 (Blackmun, J., joined by Brennan and Marshall, JJ., dissenting).

The above admonitions are especially important here because, in addition to the unreliability of a co-conspirator's statements, Mr. Hosen, proved himself to be extremely suspect and unreliable as well. Mr. Hosen hope for a T-Visa and U.S. citizenship provided him with substantial motivation to lie in order to convict Mr. Khan. And lie he did. Mr. Hosen demonstrated over and over again that he willing to intentionally lie, commit perjury, and mislead a federal agent in order to fulfill his hope of obtaining a T-Visa.

Because co-conspirator statements are presumptively unreliable, the prosecutor must corroborate the statements with "fairly incriminating evidence." *United States v. Silverman*, 861 F.2d at 578. Moreover, "[e]vidence of wholly innocuous conduct or statements by the defendant will rarely be sufficiently corroborative of the co-conspirator's statement to constitute proof, by a preponderance of the evidence, that the defendant knew of and participated in the conspiracy." *Id*. Here, the prosecution provided no evidence that Mr. Khan knew of and participated in the conspiracy with Ms. Soriano or even that these statements were made during the conspiracy.

Special Agent Jonas provided no evidence that established that Mr. Khan knowingly participated in a conspiracy to defraud the United States. Special Agent Jonas interviewed Khan on June 11, 2020 for about three hours. 3-ER-338-389. The record contains no evidence that the conversation was recorded or preserved in any significant way. Despite the length of this interview, the prosecution never entered, or even attempted to enter, any form of written record or the interview or a statement by Mr. Khan into evidence. Accordingly, Special Agent Jonas had difficulty remembering what Mr. Khan said exactly and only provided a rough summary of a few parts of his interview of Mr. Khan. 3-ER -398-400.

34

Special Agent Jonas stated that Mr. Khan said that he was familiar with Mohammad Rasel Khan, Aminul Islam, and Faroque Hosen. 3-ER-399. Special Agent Jonas stated that Mr. Khan knew Silva and identified her in a photo lineup as Ms. Soriano. 3-ER-400. Special Agent Jonas stated that Mr. Khan approached Silva to help petition the three individuals, Islam, Hosen and Khan, through RES, and that Ms. Soriano told him it the cost of the petition. 3-ER- 400-401. Finally, Special Agent Jonas explained that he believed Mr. Khan wanted his family to get a CW-1 and that Soriano would petition them and give them work otherwise they could find work elsewhere. 3-ER-402.

Special Agent Jonas memory of Mr. Khan's three hour, translated interview was spotty and lacked any specificity. Mr. Jonas' testimony lacked any reference to time other than the interview was conducted some two years after the Government alleged the conspiracy had ended. Without any time references, it is simply impossible to put Mr. Khan's statements into any context. For example, Special Agent Jonas summarized that Mr. Khan approached Silva to have her help the three individuals get petitions through RES. ER 341. The missing, critical information is obviously the date or time period that this occurred. Special Agent Jonas left out that critical information, if he ever obtained it in the first place. Without any references to time, Mr. Khan's statements constitute nothing more than innocuous chitchat from

35

the defendant himself, and cannot be a legitimate basis to prove that Mr. Khan knew about any conspiracy to defraud the United States Government or that he willingly participated in it. *United States v. Silverman*, 861 F.2d at 578.

Officer Verma's testimony provides no evidentiary assistance to the prosecutor either. Officer Verma testimony was limited to the WAC file, its contents and USCIS policies. Officer Verma had no personal involvement in this matter whatsoever other than reviewing the WAC file for purposes of explaining what it was and the processes of USCIS. Officer Verma provided no evidence to show that Defendant had knowledge of, or knowingly participated in, any conspiracy. In fact, her testimony demonstrated the opposite, that Mr. Khan did not knowingly participate in the conspiracy.

During her cross-examination, Officer Verma noted that the Petition was signed on August 11, 2018, and received by USCIS on August 17, 2018. 2-ER-152. On October 31, 2018, USCIS issued a Request for Evidence requesting additional evidence regarding the employee-employer relationship. 2-ER-154-155. RES's response to the RFE was dated January 23, 2019. 2-ER-155-157. However, the Purported Contract was dated September 30, 2018, about one month prior to USCIS issuing the RFE. Thus, the execution date of the Purported Contract belies any notion that it was made to cheat or deceive USCIS since the Petition had already been

36

received by USCIS in August, 2018, well before the Purported Contract was signed. The RFE was not issued until October 31, 2018, well after the Purported Contract was signed.

Moreover, Officer Verma testified, multiple times, that what was required to establish the employer-employee relationship is a "valid contract." 2-ER-164. The Government presented no evidence that this was a valid contract. In fact, the Government objected to defense counsel's attempt to cross examine anyone about whether this was a legally binding contract. Officer Verma, however, admitted that if the document did not contain a date to start work and a date to end the employment, that USCIS would not consider the document to be a valid contract. 2-ER-164. The Purported Contract contains no such work dates. 4-ER-713.

Mr. Hosen's testimony provides no basis for the admission of the co-conspirator's statement. Other than testifying to he claims Ms. Soriano said, Mr. Hosen's other testimony consists of innocuous statements allegedly made by Mr. Khan. The statements he claims Ms. Soriano made, cannot, standing alone, establish the needed proof of the conspiracy. *United States v. Torres*, 908 F.2d at 1424.

Finally, Ms. Ernest's testimony provides no support for the admission of the co-conspirator's statement either. In January, 2021, some five months after he was indicted, and nearly three years after the petition was filed, Mr. Khan was questioned

37

by his employer about the Purported Contract. Because of the passage of time, Ms. Ernest stated that she does not remember exactly what Mr. Khan told her 14 months ago. 3-ER-371. However, during that questioning, Ms. Ernest stated that she asked Mr. Khan if that was his signature on the Purported Contract. Mr. Khan did not answer her. 2-ER-331. Ms. Ernest stated that Mr. Khan "mentioned that he wanted to help his relatives. He's aware of his responsibilities with the company." She then asked if "Mr. Khan had told anyone about it." Mr. Khan said that "he did not." 2-ER-331. Ms. Ernest stated that Mr. Khan "acknowledged that he's not authorized to sign." Ms. Ernest then stated that Mr. Khan told her he did it to help his brothers. 2-ER-332. However, Ms. Ernest's questions, just like SA Jonas' statements, contained no specific time reference. Ms. Ernest never asked Khan, what he thought at the time the events at issue occurred – whether he believed he had the authority to sign the Purported Contract at the time he signed it. Ms. Ernest had no interest in establishing the time frame. In any event, Mr. Khan's own statements, taken by his employer, five months after he was indicted, do not show that he knowingly participated in the conspiracy to defraud the United States. All it shows, if anything, is that he signed a document in September 2018, that by the time the questioning occurred, he knew he was not authorized to sign.

Without the Government offering any proof of defendant's knowledge of and participation in the conspiracy, the co-conspirator's statements should have been excluded from evidence.

B.  THE DISTRICT COURT'S LIMITATION OF DEFENDANT'S CROSS-EXAMINATION OF OFFICER VERMA ABOUT THE LEGALITY OF THE PURPORTED CONTRACT VIOLATED MR. KHAN'S CONSTITUTIONAL RIGHTS.

The Purported Contract, allegedly signed by Mr. Khan and Ms. Soriano, on September 30, 2018, and attached to RES's response to USCIS's RFE was a critical piece of evidence in the Government's case against Mr. Khan. The Government put Senior Immigration Services Officer Monica Verma on the stand to testify about petitions for CW-1 Visas and how they are approved of by USCIS.  Officer Verma was not an expert witness. 2-ER-125.

Officer Verma talked about USCIS' requirements which the petitioner must show in order for USCIS to grant the petition. 2-ER-103. Officer Verma stated that one important requirement is that the Petitioner must demonstrate to USCIS that a legitimate employer-employee relationship exists. 2-ER-103-104. The prosecutor then asked Mr. Verma to explain what USCIS relies on to determine the existence of a legitimate employee-employer relationship. 2-ER-104. Officer Verma testified that USCIS looks for a contract to establish the relationship.  *Id*.  Officer Verma

elaborated that USCIS "want[s] to see contracts between the petitioner and the beneficiary, the petitioner and possible a third-party, if a third-party is involved, and that is the location that the beneficiary will be working at." *Id*. The prosecutor then asked Officer Verma about petition requirements for manpower companies. 2-ER-112. Officer Verma again emphasized the need for a contract. Officer Verma stated unequivocally that "[m]anpower service companies have to provide us with contracts. . . So there has to be a contract between them and the third-party that the beneficiary will be placed to work at" 2-ER-113.

Thereafter, the prosecutor took Officer Verma through the various documents contained in the WAC file. The prosecutor asked about the Request for Evidence contained in the WAC file. 2-ER-127, 4-ER-701. Officer Verma stated that the USCIS was asking for proof of the employee-employer relationship between the manpower agency and the third party who the worker will be working for. 2-ER-127. Officer Verma again testified that USCIS was requesting a contract between the manpower agency and the third party. *Id*.

Officer Verma then discussed the response to the RFE. 2-ER-129. Officer Verma stated the document attached to the RFE "is a typical agreement" that USCIS would receive between the petitioner a third party. 2-ER131. Officer Verma continued stating "Yes. So this is basically the contract between the petitioner and the

40

third-party location." *Id*. Defense counsel objected to Officer Verma's testimony that the document was a contract based upon a lack of foundation. The District Court overruled the objection because the "document itself calls itself a contract. *Id*.

During cross-examination, counsel for defense attempted to clarify what Officer Verma meant by her use of the term "contract" in her previous testimony. Officer Verma was originally directed to the employment contract between the beneficiaries and petitioner RES. 4-ER-683. Officer Verma noted that these employment contracts contained a term of employment for one year, provided for a rate of compensation, set forth the workday hours and provided for deductions for CNMI taxes. 2-ER-153. The contract had many other provisions as well including termination provisions and provisions to settle disputes. *See* 4-ER-683.

Officer Verma was then asked to look at the Purported Contract that she earlier testified was a contract. 2-ER-156-157, 4-ER-709-711. Officer Verma was asked to find a date in that document that indicated when the workers were to begin working. 2-ER-159-161. After Officer Verma's evasive answer was stricken from the record, the Government objected to defense counsel's line of questioning. 2-ER-160-161. The prosecution stated that defense counsel "has disputed the validity of a contract and whether it exists and now he's asking her to testify about a contract and its effective dates and when work begins, which she has nothing to do with. . . He's

asking a – direct testimony about the contract, not as it fits into the process." 2-ER-161. The District Court sustained the objection. *Id*. Defense counsel then asked Officer Verma "You -- you want a contract -- earlier in your testimony, you said a contract is critical, right?" 2-ER-161-162. Officer Verma agreed. 2-ER-162. Defense counsel then asked, "Okay. And a contract is a mutual obligation between parties; is that what you understand it?" to which the Government again objected and the District Court again sustained the objection. 2-ER-162.

In further questioning, Officer Verma admitted that USCIS needs to see a "valid contract" to show the existence of an employer-employee relationship. 2-ER-163-164. Defense counsel asked Officer Verma "if a contract doesn't have any requirement to start work and to end work, is that a valid contract in the eyes of the USCIS? Officer Verma stated, "No." 2-ER-164. Thereafter, during re-direct, the prosecution asked Officer Verma, "Has it ever been legal -- has it ever been legal to submit fraudulent contracts to establish third-party work sites?" Officer Verma said "No." 2-ER-184.

The above colloquy with Officer Verma emphasizes the importance of the question "exactly what is the Purported Contract?" Is it a legally binding contract or just a non-binding memorandum of understanding? This is important because Officer Verma testified that what was needed to show a employee-employer relationship was

a valid contract. However, defense counsel was prevented from exploring the issue of exactly what Officer Verma meant by using the term "contract" and "valid contract" and to explore whether or not this document met the requirements of USCIS in approving a CW-1 petition.

Without being able to cross-examine and challenge, Officer Verma's testimony about a contracts, Officer Verma was free to continually refer to the document in any way that she wanted to and was free to testify that whatever it was, it was relied upon by USCIS in the approval of the Petition.

The Confrontation Clause of the Sixth Amendment includes a criminal defendant's right cross-examine witnesses against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S.Ct. 1431 (1986). The right to confront witnesses includes the defendant's right to effectively cross-examine the witness. *Davis v. Alaska*, 415 U.S. 308, 318, 94 S.Ct. 1105 (1974).

The Confrontation Clause's main purpose "is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the, context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). "Effective cross-examination is critical to a fair trial because '[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.'" *United States v. Larson*, 495 F.3d 1094,

1102 (9th Cir. 2007) *quoting Davis v. Alaska*, 415 U.S. at 316, 94 S.Ct. 1105. Both the Ninth Circuit and the United States Supreme Court have "emphasized the policy favoring expansive witness cross-examination in criminal." *United States v. Larson*, 495 F.3d 1102, quoting *United States v. Chung Lo*, 231 F.3d 471, 482 (9th Cir. 2000). However, "a limitation on cross examination does not violate the Confrontation Clause unless it limits relevant testimony and prejudices the defendant." *United States v. Rodriguez-Rodriguez*, 393 F.3d 849, 856 (9th Cir. 2005).

Here, there is not dispute that the purported document attached by RES to its response to USCIS' RFE was highly relevant to the Government's case. This document was essentially the only real piece of physical evidence that the Government had that demonstrated that Mr. Khan willingly partook in the conspiracy. Officer Verma made the question of the actual characteristic of the document highly relevant when she testified that USCIS needs to see a valid contract in order determine that the employer-employee relationship was formed. See 2-ER-164. However, despite the testimony of Officer Verma, Defendant was prevented from adequately cross-examining Officer Verma on the subject of whether the document was an actual valid contract that bound Kanoa to hiring CW-1 workers.

By being prevented from cross-examining Officer Verma on such issue, Mr. Khan was prejudiced as he could not show that the Purported Document was

44

incapable of influencing USCIS's decision to grant the Petition. Accordingly, Mr. Khan's constitutional right to effectively cross-examine Officer Verma on theses issues was violated.

C.   MR. KHAN'S TRANSLATED STATEMENTS MADE DURING QUESTIONING BY SA JONAS WERE INADMISSIBLE AND VIOLATED MR. KHAN'S SIXTH AMENDMENT RIGHT TO CONFRONTATION BECAUSE THE GOVERNMENT FAILED TO CALL THE TRANSLATOR.

Special Agent Jonas interviewed Mr. Khan on June 11, 2020. 3-ER-389. SA Jonas stated that he used a Bengali translator, translating over the phone, to translate the entire conversation between him and Mr. Khan. 3-ER-332, 353. SA Jonas questioned Mr. Khan for about three hours. 3-ER-397. There was no evidence in the record that the three hours of questioning was recorded or transcribed. The prosecution did not enter, or even attempt to enter, any statement of Mr. Khan obtained from the questioning.

SA Jonas testified, for the most part, from his memory about what was said during June 11, 2020, three hour interview. Because the questioning occurred over two years ago, SA Jonas stated that he had difficulty recalling what exactly was said. The Government never called the translator to testify at trial.

1.   *SA Jonas complete lack of knowledge about the translator used the questioning of Mr. Khan made the interpretation inadmissible at trial.*

In this Circuit, when a person is translating a conversation between a defendant and a third party, the translator, in some circumstance, may be acting as a language conduit for the defendant and, if so, there are no hearsay or Sixth Amendment issues. *United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991); *United States v. Orm Hieng*, 679 F.3d 1131, 1139 (9th Cir. 2012).

The *Nazemian* Court held that a determination of whether the translated statements can be fairly considered as the statements of the defendant should be made on a case by case basis. *United States v. Nazemian*, 948 F.2d at 527. In making such a determination, all relevant factors must be considered, including who provided the interpreter, whether the interpreter had reason to "mislead or distort," "the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as translated." *Id*.; *United States v. Orm Hieng*, 679 F.3d at 1139.

SA Jonas does not speak Bengali. ER 332. In order to conduct the questioning of Mr. Khan, SA Jonas called a private translation company on the phone and was provided with a randomly selected translator. ER 336. SA Jonas did not know any information about the translator he was using, not even the translator's name. ER 349.

46

When asked if he knew any of the translator's qualifications to translate, SA Jonas stated he had no information about the translator's qualifications. ER 349, 351. SA Jonas explained that he did not ask the translator for any such information because it was not his position make such inquiries and had no concerns about translators. ER 349-351.

Due to the complete lack of information about the translator, the Government cannot show that there was a lack of motive to mislead or distort the translation. Moreover, without some evidence by the Government demonstrating the interpreter's language ability or qualification to properly translate, the interpreter here cannot be said to be a language conduit for Mr. Khan. *See United States v. Romo-Chavez*, 681 F.3d 955, 964 (9th Cir. 2012)(Berzon, J. concurring).

In *United States v. Romo-Chavez*, Judge Berzon explained that the *Nazemian* standard requires a "high degree of reliability" and "[w]here the interpreter's background and tested proficiency does not confirm the capacity for such accuracy, the entire premise on which *Nazemian* stands—shaky though it may be with regard to the Confrontation Clause after *Crawford*,—collapses." *Id*. at 964 (Berzon, J., concurring)(internal citations omitted). Because SA Jonas did not and cannot provide any evidence of the interpreter's background, competency or ability, the translator cannot be deemed a conduit for Mr. Khan under the *Nazemian* standard. Thus, SA

47

Jonas' testimony regarding his understandings and summaries of what Mr. Khan said during the interview are inadmissible under *Nazemian* and its progeny and should have been excluded.

2. *SA Jonas' testimony about statements made through an interpreter violated Mr. Khan's Sixth Amendment right to confrontation.*[1]

This Court has indicated that its holding in *Nazemian* might be in jeopardy in light of *Crawford v. Washington*, 541 U.S. 36 (2004), *Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 129 S.Ct. 2527 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S.Ct. 2705 (2011). *United States v. Orm Hieng*, 679 F.3d 1131, 1149 (9th Cir. 2012)(Berzon, J., concurring). In *Orm Hieng*, Judge Berzon stated that given the holding of *Crawford*, and its progeny, the Court should reconsider the vitality of its Confrontation Clause precedent, *en banc*. *Id*., at 1145 (Berzon, J., concurring). Judge Berzon also noted that *Nazemian's* holding "seems in great tension" with the holdings of *Melendez–Diaz and Bullcoming*. *Id*., at 1149. (specific case citations omitted). Judge Berzon explained that "[t]ranslation from one language to another is much less of a science than conducting laboratory tests, and so much more subject to error and dispute." *Id*. As indicated above, Judge Berzon reiterated

---

[1] Mr. Khan acknowledges that *United States v. Nazemium*, 948 F.2d 522, (9th Cir. 1991) is the authoritative precedent in this matter and understands that *United States v. Orm Hieng*, 679 F.3d 1131 (9th Cir. 2012), which was decided after *Crawford*, upheld the *Nazemium* decision.

her concerns about the continuing vitality of *Nazemian* in *Romo–Chavez* case as well. *United States Romo-Chavez*, 681 F.3d at 962; *See also United States v. Charles*, 722 F.3d 1319 (11ᵗʰ Cir. 2013) (Rejecting *Nazemian* and the language conduit theory as a challenge to foreign language interpreter under the Sixth Amendment).

Here, Special Agent Jonas testified that, during the questioning, Mr. Khan told him, through the translator, that he approached Ms. Soriano to help the three men petition USCIS through RES. SA Jonas also stated that Mr. Khan told him that Ms. Soriano needed the men to pay a fee for the service (P. 341). Without being able to cross-examine the translator, this testimony violated Mr. Khan's constitutional right to cross examination pursuant to *Crawford v. Washington,* 541 U.S. 36 (2004) and its progeny, despite existing Ninth Circuit precedent.

The Sixth Amendment to the United States Constitution provides a defendant with the right "to be confronted with the witnesses against him[.]" U.S. Const. Amend. VI. The right to cross-examine the witnesses is a fundamental right under the Confrontation Clause. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065 (1965). In *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354 (2004), the Supreme Court held that the Sixth Amendment permits the admission of "testimonial statements of witnesses absent from trial ... only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."

49

Testimonial statements are "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. at 51–52.

The interpreter's translations made during SA Jonas' questioning of Mr. Khan were testimonial statements. Prior to the questioning, SA Jonas required Mr. Khan to sign a waiver of rights form. P. 333. Moreover, the statements of Mr. Khan testified to by SA Jonas were intended to connect Mr. Khan to Ms. Soriano and the alleged conspiracy. Any objective person would believe that Mr. Khan's statements would be used against him at trial. Thus the government was required to call the translator as a witness at trial and subject that person to cross-examination. *See United States v. Charles*, 722 F.3d 1319, 1323 (11th Cir. 2013)(Finding that an interpreter made an out-of-court, testimonial statement when she translated, over-the-phone, what the defendant said in to English during an interview between CBP officer and defendant). Under *Crawford* and its progeny, it was error for the trial court to allow SA Jonas to testify about what Mr. Khan said in that 2020 interview.

D.    THERE WAS INSUFFICIENT ADMISSIBLE EVIDENCE AT TRIAL FROM WHICH ANY REASONABLE JUROR COULD HAVE FOUND MR. KHAN GUILTY OF A CONSPIRACY TO DEFRAUD THE UNITED STATES.

In order to convict for any offense, the prosecution must prove each element of the charge beyond a reasonable doubt. *United States v. Atkinson*, 990 F.2d 501, 502 (9th Cir. 1993). Evidence sufficient to support a conviction cannot be a product of suspicion or speculation. *See Mikes v. Borg*, 947 F.2d 353, 357-60 (9th Cir. 1991) (murder conviction reversed when jury left to speculate regarding the time frame when defendant's fingerprints were imprinted on gun); *United States v. Burton*, 324 F.3d 768, 770 (5th Cir. 2003)(evidence insufficient to prove interstate commerce element as jury left to speculate whether the automobile at issue was manufactured outside of Mississippi).

A factual inference or conclusion is not reasonable if it is only a guess or a possibility. *Id*.; *See also United States v. Thomas*, 453 F.2d 141, 143 (9th Cir. 1971) (mere suspicion or speculation cannot be the basis for the creation of logical inferences to substantiate conviction). Therefore, "[w]hile all inferences must be made in favor of the prosecution, leaps of logic should not be." *Evans-Smith v. Taylor*, 19 F.3d 899, 908 n.22 (4th Cir. 2004). *See also Thomas*, 453 F.2d at 143.

51

At the trial here, the jury was instructed on the elements of the conspiracy to defraud as follows:

First, between on or about August 1, 2018 and on or about February 11, 2019, there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of a specific government agency—here, U.S. Citizenship and Immigration Services ("USCIS")—by deceitful or dishonest means;

Second, the defendant became a member of the conspiracy knowing of its object and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed. 3-ER-618-619 (Excerpts from final jury instructions).

At the close of the Government's evidence, the defense made a Rule 29 motion for acquittal. The Court denied the motion. Defense renewed the Rule 29 motion for acquittal at the close of all the evidence. Again, the District Court denied Defense's motion. The denial of Defendant's Rule 29 motions were in error as the Government failed to prove each element of Conspiracy to Defraud the Government beyond a reasonable doubt. Moreover, the Government, on the whole, failed to prove Mr. Khan's guilt beyond a reasonable doubt.

Here, the Government failed to show that there was an agreement to defraud the Government, and failed to show that Mr. Khan became a member of the conspiracy knowing of its object and intending to help accomplish it. As for there being a conspiracy between two people, no one testified about an agreement to do something unlawful. The Government argued that Ms. Soriano was the main conspirator here. SA Jonas testified that Servillana Soriano was the owner and operator of RES International. 2-ER-83. However, the Government never called Ms. Soriano.

There is scant evidence that Ms. Soriano, had any involvement with the company or with the actual filing of the Petition. As shown by the documents in the Petition, Mr. Soriano was the one hundred percent owner and operator of RES. 4-ER-648-717. Mr. Soriano also signed the Petition. 4-ER-651-652.

Mr. Hosen's testimony about Ms. Soriano provides no evidence of a conspiracy, in fact he entire testimony is utterly worthless having admitted to lying to SA Jonas and the prosecutor about material facts multiple times and even lying during direct examination during the trial.

Although, the credibility of a witness is nearly always the sole province of the jury, this Court may question a witness' credibility in some extreme instances where "there comes a point when the witness' qualifications are so shoddy that a verdict of

53

acquittal should have been directed." *Lydia v. United States*, 321 F.2d 788, 794 (9th Cir. 1963). Here, Mr. Hosen is regarded by the prosecution as a co-conspirator and an accomplice, as such his testimony is "inherently suspect." *United States v. Bernard*, 625 F.2d 854, 857 (9th Cir. 1980)(Testimony of an accomplice or conspirator is inherently suspect). Moreover, Mr. Hosen, at the time he testified, was awaiting sentencing for his conviction and was testifying in hopes of obtaining a lesser sentence. 2-ER-194. Obviously, Mr. Hosen knew that his cooperation and testimony at Mr. Khan's trial would have an impact at his sentencing.

Additionally, a witness who testifies with an expectation of receiving a benefit from the Government should also be regarded with suspicion as the witness has an incentive to lie. *United States v. Leung*, 35 F.3d 1402, 1405 (9th Cir. 1994); *See also* 9th Cir. Model Crim. Jury Instruction 3.9 (instructing jury to examine the testimony of witnesses who receive benefits from the government "with greater caution than that of other witnesses."). While Mr. Hosen was testifying, he was waiting for the Government to process his T-Visa. Mr. Hosen knew that a T-Visa gave him a pathway to United States citizenship. 2-ER-234, 236. Mr. Hosen hoped that the Government would approve his application for a T-Visa and he believed that assisting the Government would help him obtain the visa. 2-ER- 195, 233-234. While Mr. Hosen was waiting for the T-Visa Homeland Security Investigation also gave him an

employment authorization which allowed him to work. 2-ER-196.

The above credibility problems with Mr. Hosen, while substantial, are certainly not near enough for this Court to be able to question Mr. Hosen' credibility. However, at trial, Mr. Hosen admitted to lying at least twice to SA Jonas and the prosecutor, admitted to perjury, and admitted to committing fraud upon USCIS. 2-ER-239 (Lied about the $8,000 dollar contract); 2-ER-241 (lied about losing his job because he did not pay Mr. Khan); 2-ER-251 (admitted to fraud when he submitted fake taxi certificate to USCIS); 2-ER- 237-238 (admitted to perjury). Mr. Hosen also admitted to lying to the jury on direct and cross-examination. 2-ER-217-218, 251-252 (Lied on the stand about never seeing fake janitorial certificate until he saw it HSI office on direct and cross-examination). As shown below, the record shows no corroboration to Mr. Hosen's testimony, not even from SA Jonas when he testified for the second time.  Given the above, no reasonable person could have believed Mr. Hosen's testimony about Mr. Khan's involvement in his CW-1 petition or with Ms. Soriano.

Even if this Court finds that it cannot question Mr. Hosen's credibility, his testimony does not show that he had an agreement with anyone to break the law. Mr. Hosen explained that Mr. Khan, at some point in time, told him there's a processing fee to renew the CW document and that is all that was said in that meeting. 2-ER-201.

In a second meeting, sometime in 2018, Mr. Hosen said he asked Mr. Khan if there is a way to renew his CW-1 permit. 2-ER-205. Mr. Khan told him basically to go see Ms. Soriano. 2-ER-205. Mr. Hosen never gave a specific date in 2018 when this conversation with Mr. Khan was made. Finally, Mr. Hosen said, at one point, that Mr. Khan mentioned, in reference to helping with a CW-1 permit. "I'll see what I can do. You guys go to her . . . and do the paperwork." 2-ER-206. However, there is no evidence indicating when Mr. Khan mentioned this to Mr. Hosen.

Then Mr. Hosen explained that the went to Ms. Soriano's house with Halim's two brothers. 2-ER-206. Mr. Khan had no involvement in this. Mr. Hosen said he signed the employment contract with RES and the job offer document from RES. 2-ER-209-210, 4- ER-685, 693. Hosen stated that Mr. Aminul Islam gave these papers to Mr. Hosen. ER 153. It appears that Richard G. Soriano, signed both these documents for RES International 4- ER-685, 693. Mr. Hosen stated that after signing these two documents, he met with Ms. Soriano. 2-ER-211. Mr. Rasel Khan and Mr. Aminul Islam were there at the meeting with Mr. Soriano. *Id*. However, the Government never called Mr. Aminul Islam or Mr. Rasel Khan to testify.

Mr. Hosen also testified about a janitorial certificate. 2-ER-218. Mr. Hosen said the certificate was not true because he did not work as a janitor for three years. *Id*. However, he did not know who gave the document to Ms. Soriano. 2-ER-219.

56

In fact, there was no evidence that Ms. Soriano ever received or saw this document. In fact, there is no evidence that anyone other than Mr. Hosen himself knew that the certificate was not truthful.

Then after that first meeting, Mr. Hosen met again and Ms. Soriano gave him what Mr. Hosen described as a CW approval notice. 2-ER-220. There is no evidence in the record to show what Mr. Hosen was referring to. Mr. Hosen then talked about using the approval notice to find other employment. ER 165. However, there is no evidence showing that this notice was capable helping Mr. Hosen find a job. Finally, Mr. Hosen at some point asked Mr. Khan if he can "get to work for Ms. Soriano." 2-ER-166. Mr. Hosen said Mr. Khan told him "it's up to you." *Id*.

None of the above testimony is probative of an agreement to cheat and deceive the USCIS. More importantly, Mr. Hosen's testimony does not, in any way, demonstrate the Mr. Khan knew of, or willing participated in any conspiracy.

The testimony provided by Special Agent Jonas fails to provide any evidence to show there was an agreement to cheat the USCIS or that Mr. Khan knew of or willing participated in such conspiracy. The only testimony provided by SA Jonas came from the June 11, 2020 interview with Mr. Khan. Assuming that SA Jonas' testimony about Mr. Khan's statements made during the interview was not improper, Special Agent Jonas informed the jury that Mr. Khan said he knew Ms. Soriano, that

57

Mr. Khan approached Ms. Soriano to help the three men petition thought RES. Mr. Khan also told Special Agent Jonas that Ms. Soriano told him that the men needed to pay her a fee in order for her to submit a petition. 3-ER-400. SA Jonas was not able to provide any further details other than a rough summary of what Mr. Khan said because there was no recording or statement taken of Mr. Khan. SA Jonas provided no dates as to when Mr. Khan approached Ms. Soriano or provided any specific details about the conversation.

Ms. Ernest provided no evidence of the existence of a conspiracy, or that Mr. Khan knew of, or willing participated in any conspiracy. Ms. Ernest testified that Mr. Khan admitted to not being authorized to sign the Purported Contract. 2-ER-331-332. Ms. Ernest said that Mr. Khan was not authorized to enter into contracts regarding the employment of CW-1 workers. 2-ER-344-345. However, Ms. Ernest never asked if Mr. Khan thought he was authorized to enter into the Purported Contract at the time it was signed. Moreover, Ms. Ernest never asked Mr. Khan about Ms. Soriano, RES, Misimis Construction or about any other people who were allegedly involved in this matter. The only relevant evidence that Ms. Ernest provided was that Mr. Khan at the time of the interview, Mr. Khan knew he did not have authorization to enter into a contract regarding CW-1 workers.

58

The Government also failed to prove that the Purported Contract is a valid contract. Ms. Verma testified that USCIS will only rely on a valid contract to substantiate the employee-employer relationship. There is no evidence that the Purported Contract was a valid contract and that USCIS relied upon that document in granting the Petition.

On its face, the Purported Contract cannot be said to anything than a memorandum of understanding that Kanoa Resort will employ the men if Kanoa ever needs them. No reasonable person, or USCIS employee, could think that this document is an valid employment contract for these men.

Moreover, the Purported Contract cannot be evidence of Mr. Khan's intent to be part of a conspiracy. The completed Petition was submitted to USCIS on August 11, 2018. Thereafter, well before USCIS sent out its RFE, the Purported Contract was signed on September 30, 2018. Thereafter, the USCIS issued it RFE on October 31, 2018. Thereafter, RES attached the Purported Contract to its response to the RFE. There was no way of knowing by anyone, and certainly not by Mr. Khan, that when the Purported Contract was signed, that RES would later attach it to a RFE issued months later by USCIS. Moreover, the Government provided no evidence that Mr. Khan had any knowledge that the Purported Contract was going to be submitted to USCIS. Accordingly, the Government failed to proved beyond a reasonable doubt

59

that an agreement to cheat and deceive the USCIS existed and furthermore, that Mr. Khan had knowledge of, or knowingly participated in, any conspiracy.

## CONCLUSION

For the foregoing reasons, this Court should vacate the conviction against Mr. Khan and enter a judgment of acquittal or vacate Mr. Khan's conviction and remand for a new trial.

Respectfully submitted this 28th day of June, 2023 (PDT).

//s// Bruce Berline
P.O. Box 5682
Saipan, MP 96950
Counsel for Appellant Halim Khan

## STATEMENT OF RELATED CASES

Pursuant to Cir. R. 28-2.6, Defendant Khan identifies the following related case currently pending in this Court:

| | |
|---|---|
| Case Name: | *United States of America v. Servillana Soriano* |
| Docket Number: | 22-10229 |
| Originating Case Number: | 1:20-cr-00007-RVM-1 |
| Relationship to this Case: | Co-defendant/co-conspirator tried and convicted in a separate jury trial in the District of the Northern Mariana Islands for the same conspiracy to defraud the United States |

Dated this 25th day of September, 2023 (PDT).

//s// Bruce Berline
BRUCE BERLINE, ESQ.
P.O. Box 5682
Saipan, MP 96950
Counsel for Appellant Halim Khan

61

CERTIFICATE OF COMPLIANCE

PURSUANT TO FED. R. APP. P. 32(A)(7)(C) AND CIR. R. 32-1
APPEAL NO. 23-480

I certify that, pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the foregoing opening brief is proportionately spaced, has a typeface of 14 points and contains less than 14,000 words. Specifically, the opening brief contains approximately 13,952 words as determined by the word count feature contained in WordPerfect.

Dated this 25th day of September, 2023 (PDT).

//s// Bruce Berline
BRUCE BERLINE, ESQ.
P.O. Box 5682
Saipan, MP 96950
Counsel for Appellant Halim Khan

## PROOF OF SERVICE

Pursuant to Circuit Rules 25-5 and 30-1, I certify that this day the foregoing

BRIEF OF APPELLANT and APPELLANT'S EXCERPTS OF RECORD were filed

electronically and served on the Court and Appellee via CM/ECF.

Dated this 25th day of September, 2023 (PDT).

//s// Bruce Berline
BRUCE BERLINE, ESQ.