APPEAL NO. 23-480

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

## UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

## HALIM KHAN,

*Defendant-Appellant.*

---

APPEAL FROM THE DISTRICT COURT FOR
THE DISTRICT OF THE NORTHERN MARIANA ISLANDS
Case 1:20-cr-00007-RVM-2

---

## UNITED STATES' ANSWERING BRIEF

---

SHAWN N. ANDERSON, United States Attorney
Districts of Guam & the Northern Mariana Islands

Albert S. Flores, Jr., Assistant United States Attorney
2nd Floor, United States Courthouse
P.O. Box 500377
Saipan, MP 96950
(670) 236-2980

Attorneys for Plaintiff-Appellee

## **TABLE OF CONTENTS**

I.    ISSUES ........................................................................................ 1

II.   STATEMENT OF THE CASE.................................................... 1

      A. Investigation.................................................................... 1

      B. Procedural History .......................................................... 3

      C. Khan's Trial .................................................................... 4

            1.  Government's Evidence ........................................... 4

            2.  Final Jury Instructions........................................... 19

            3.  Verdict .................................................................... 20

      D. Sentencing ....................................................................... 20

III.  SUMMARY OF ARGUMENT .................................................. 20

IV.   ARGUMENT .......................................................................... 22

      A. Faroque Hosen's testimony regarding statements made by Halim
         Khan's co-conspirator was admissible under Rule 801(d)(2)(E)
         because the co-conspirator statements were made during and in
         furtherance of the conspiracy........................................... 22

            1.  Standard of Review.................................................. 22

            2.  Background Law........................................................ 22

            3.  Argument ................................................................. 24

      B. The limitation of Khan's cross examination of Officer Verma did
         not violate the Confrontation Clause ............................... 28

            1.  Standard of Review.................................................. 28

            2.  Background Law........................................................ 28

            3.  Argument ................................................................. 29

      C. The Prosecution was not required to call a translator as a witness to
         admit the statements of Khan to SA Jonas ...................... 32

            1.  Standard of Review.................................................. 32

2. Background Law ........................................................................ 32

3. Argument ................................................................................... 33

D. The Government's evidence was legally sufficient ......................... 35

1. Standard of Review .................................................................... 35

2. Statute and Essential Elements ................................................ 36

3. Argument ................................................................................... 38

V. CONCLUSION ................................................................................... 40

## <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Bourjaily v. United States*, 483 U.S. 171 (1987) ........................ 22, 24, 26, 27

*Chee v. United States*, 449 F.2d 747 (9th Cir. 1971) .................................... 32

*Coleman v. Johnson*, 566 U.S. 650 (2012) ............................................ 35, 36

*Garlington v. O'Leary*, 879 F.2d 277 (7th Cir. 1989) .................................. 24

*Jackson v. Virginia*, 443 U.S. 307 (1979) ...................................................... 35

*Sendejas v. United States*, 428 F.2d 1040 (9th Cir. 1970) ........................... 24

*United States v. Aifang Ye*, 808 F.3d 395 (9th Cir. 2015) ..................... 33, 34

*United States v. Arambula-Ruiz*, 987 F.2d 599 (9th Cir. 1993) .................. 24

*United States v. Bowman*, 215 F.3d 951 (9th Cir. 2000) .............................. 22

*United States v. Crespo de Llano*, 838 F.2d 1006 (9th Cir. 1988) ......... 22, 23

*United States v. Garcia*, 16 F.3d 341 (9th Cir. 1994) ............................. 32, 33

*United States v. Hollis*, 490 F.3d 1149 (9th Cir. 2007) ............................... 32

*United States v. Larson*, 495 F.3d 1094 (9th Cir. 2007) ........................ 28, 29

*United States v. Layton*, 855 F.2d 1388 (9th Cir. 1988) .............................. 23

*United States v. Loya*, 807 F.2d 1483 (9th Cir. 1987) ................................. 23

*United States v. Manning*, 56 F.3d 1188 (9th Cir. 1995) ............................ 23

*United States v. Mikhel,* 889 F.3d 1003 (9th Cir. 2018) ....... 28, 29, 30, 31, 32

*United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991) ............... 24, 33, 34

*United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) ......................... 35, 36

*United States v. Nixon*, 418 U.S. 683 (1974) ............................................... 23

*United States v. Romo-Chavez*, 681 F.3d 955 (9th Cir. 2012) .............. 33, 34

*United States v. Schmit*, 881 F.2d 608 (9th Cir. 1989) ................................ 24

*United States v. Singh*, 995 F.3d 1069 (9th Cir. 2021) ................................. 28

*United States v. Smith*, 893 F.2d 1573 (9th Cir. 1990)................................. 22

*United States v. Spawr Optical Research, Inc.*,

  685 F.2d 1076 (9th Cir. 1982) ............................................................. 23, 27

*United States v. Williams*, 989 F.2d 1061 (9th Cir. 1993)..................... 23, 24

*United States v. Yarbrough*, 852 F.2d 1522 (9th Cir. 1988) ....................... 24

*United States v. Zavala-Serra*, 853 F.2d 1512 (9th Cir. 1988) ................... 24

## **Statutes**

18 U.S.C. § 371................................................................................... 1, 3, 4, 36

## **Rules**

Fed. R. Evid. 801 ................................................................. 11, 20, 22, 25, 28

## **Other Authorities**

Ninth Circuit Manual of Model Criminal Jury

  Instructions No. 11.2 (2022) ................................................................ 37, 38

## I.  ISSUES

Below, a jury found Appellant-Defendant Halim Khan ("Khan") guilty of one count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371.  Khan now raises the following issues related to that conviction on appeal:

1.  Did the lower court abuse its discretion by allowing Faroque Hosen to testify about statements made by co-conspirator Servillana Soriano?

2.  Did the lower court abuse its discretion by limiting the cross examination of USCIS Senior Immigration Officer Monica Verma?

3.  Did the lower court abuse its discretion by admitting statements made by Khan to Special Agent Frederic Jonas, which were made via an interpreter?

4.  After reviewing the evidence in the light most favorable to the prosecution, could any rational trier of fact have found that the essential elements of Conspiracy to Defraud the United States were proven beyond a reasonable doubt?

## II.  STATEMENT OF THE CASE

### A.  Investigation

The Commonwealth of the Northern Mariana Islands Only Transitional Worker Program (commonly known as the "CW-1 Program") is a mechanism

1

whereby businesses in the Commonwealth of the Northern Mariana Islands ("CNMI") can petition to the United States government, so that foreign citizens may obtain temporary immigration status (a "CW-1 visa") to work for that company. 2-ER-99-135. In 2017, United States Homeland Security Investigations ("HSI") began investigating Misamis Construction Company ("Misamis Co."), based on reports that the company was submitting fraudulent petitions to United States Citizen and Immigration Services ("USCIS") on behalf of foreign citizen beneficiaries. 2-ER-80-95. The basis of the fraud was that Misamis Co. was submitting petitions to USCIS so foreign beneficiaries could obtain CW-1 visas, but Misamis Co. was not actually employing these beneficiaries as required under the CW-1 Program. *Id*.

In 2020, HSI Special Agent Frederic Jonas ("SA Jonas") became the lead case agent for an expanded investigation of this fraud, which included an investigation of RES International, LLC ("RES International"), a company on the island of Saipan in the CNMI. *Id*. HSI determined RES International was also submitting petitions for CW-1 visas under the same fraudulent guise as Misamis Co. *Id*.

While investigating RES International, SA Jonas interviewed Richard Soriano ("R. Soriano"), a United States citizen and the owner of RES

2

International. 2-ER-80-95. SA Jonas also interviewed R. Soriano's mother, Servillana Soriano ("Soriano") (co-conspirator with Khan), who manages and operates RES International. *Id*. SA Jonas also interviewed Khan, a citizen of Bangladesh. *Id*. With these interviews, and with other information collected during the investigation, SA Jonas identified that RES International submitted a CW-1 petition for three citizens of Bangladesh: Aminul Islam, Faroque Hosen, and Mohammad Khan. *Id*. This CW-1 petition was admitted as Government's Exhibit 1 at trial. *See* 4-ER-648-717. The submission of this fraudulent CW-1 petition by RES International is the basis for which Khan and his co-conspirators were indicted. *See* 3-ER-551 (Prosecution Closing Argument).

Khan and two co-defendants were indicted on July 30, 2020, charging a sole count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371. D. N. Mar. I. Crim Case No. 1:20-cr-00007, ECF No. 4.

### B. Procedural History

On October 6, 2020, a Grand Jury issued a Superseding Indictment against Khan, charging one count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371. D. N. Mar. I. Crim Case No. 1:20-cr-00007, ECF No. 33. On January 12, 2021, a Grand Jury issued an Amended Superseding Indictment against Khan, charging one count of Conspiracy to

Defraud the United States, in violation of 18 U.S.C. § 371. D. N. Mar. I. Crim

Case No. 1:20-cr-00007, ECF No. 63.

On March 25, 2021, a Grand Jury issued a Second Superseding

Indictment against Khan, charging one count of Conspiracy to Defraud the

United States, in violation of 18 U.S.C. § 371, and naming Soriano, Aminul

Islam ("Islam"), Faroque Hosen ("Hosen"), and others known to the Grand

Jury, as co-conspirators. 4-ER-646-47.

On March 28, 2022, Khan was convicted at trial by a jury. *See* 3-ER-

636. Khan filed Appellant's Opening Brief on September 25, 2023, and has

remained at liberty pursuant to the district court's sentencing order. *See*

Appellant's Opening Br. p. 7.

### C.  Khan's Trial

#### 1.  Government's Evidence

At trial, the Government called four witnesses in its case-in-chief and

relied upon three exhibits. 3-ER-554.[1] First to testify was SA Jonas, who

provided the background into HSI's investigation of Misamis Co., RES

International, and Khan. 2-ER-80-84. SA Jonas explained that HSI suspected

---

[1] When the Government moved to enter Exhibit 1 into evidence, Khan simultaneously moved for Government's Exhibit 1A to be admitted as a defense exhibit. Government's Exhibit 1 and 1A are documents that were contained in USCIS records pertaining to the petition in question. *See* 2-ER-86-95. The distinction between Exhibit 1 and 1A is not an issue on appeal.

these two companies of submitting CW-1 petitions on behalf of foreign citizens, so those citizens could obtain an employment visa specifically to work in the CNMI. *Id*.

Foreign citizens were paying large sums of money to these companies to facilitate the CW-1 visa process, but some of the foreign citizens were not provided work by the companies as required under the CW-1 program. *Id*. Instead, the foreign citizens were required to find work on their own once they arrived to the CNMI. *Id*. In essence, Misamis Co. and RES International were profiteering by recruiting and charging foreign citizens who wanted immigration status in the CNMI.

Government's Exhibit 1 [4-ER-648-717] (exhibit not in its entirety) was introduced via SA Jonas, which is the fraudulent CW-1 petition in question. 2-ER-84-87. The petition is known as a "Form I-129CW, Petition for a CNMI-Only Nonimmigrant Transition Worker," and this is the documentation submitted to USCIS by RES International as the petitioner, on behalf of the beneficiaries, Aminul Islam, Faroque Hosen, and Mohammad Rasel Khan. 2-ER-84-87. Government's Exhibit 1 is documents contained in a record kept by USCIS, known as a WAC file, with each WAC file being specific to a certain CW-1 petition. *Id*.

The Government's second witness was USCIS Senior Immigration Services Officer Monica Verma ("Officer Verma"). 2-ER-98. Officer Verma provided background and an explanation of laws pertaining to the CW-1 Program. 2-ER-99-135.[2] In summary, Officer Verma's testimony included:

- Officer Verma worked at USCIS for more than thirteen years and received specific training on the CW-1 Program. 2-ER-99.

- The role of USCIS in the CW-1 Program is to determine the eligibility of foreign workers to receive an employment visa specific for the CNMI, which is ultimately granted by the United States Department of State. 2-ER-100.

- The business submitting a CW-1 petition on behalf of a foreign citizen is known as the "petitioner" and the foreign citizen obtaining the CW-1 status is the "beneficiary." 2-ER-102-103.

- A wide range of employment positions are eligible for CW-1 visas, but the employment must not be illegal work. 2-ER-103.

- CW-1 beneficiaries must work in the CNMI, and there must be an employer-employee relationship between the business-petitioner and the foreign citizen-beneficiary. 2-ER-103.

---

[2] Officer Verma did not testify as an expert witness and this distinction is not at issue on appeal.

6

- An employer-employee relationship exists when the petitioner can hire, fire, and control the beneficiary. 2-ER-104. In assessing the required employer-employee relationship requirement, USCIS examines CW-1 petitions to ensure there is an employment contract between the petitioner and the beneficiary. *Id*.

- USCIS will send a Request for Evidence (RFE) notice to petitioners when petitions lack necessary information for USCIS to award eligibility. 2-ER-107. Petitioners can respond and supplement their petitions. *Id*.

- The cost of a petition includes a $460 base filing fee, $200 education funding fee, fraud fee of $50, and sometimes[3] a biometric fee of $85. 2-ER-109. When multiple beneficiaries are included in one petition, the base filing fee and fraud fee remains the same, but the education fee is multiplied by the number of beneficiaries on the petition. 2-ER-110. For three beneficiaries, the cost of the petition would be $1,110. 2-ER-110.

- A manpower agency (such as RES International) can petition for beneficiaries who will perform labor for a third party. 2-ER-113. In

---

[3] Biometric fees are required when a beneficiary does not already have biometric data on file with USCIS. This distinction is not at issue on appeal.

these circumstances, the beneficiary must remain employed full-time
by the petitioner and USCIS examines petitions to ensure a contract
exists between the petitioner and a third party where the labor will be
performed. *Id.*

- Officer Verma reviewed Government's Exhibit 1 and noted USCIS sent
  an RFE to RES International in response to this petition, to prove an
  employer-employee relationship existed between the petitioner and the
  beneficiaries, and to prove that a contract existed between the petitioner
  and a third party where the beneficiaries would perform labor. 2-ER-
  127-28.

- RES International responded to the RFE by submitting a contract (a
  document titled, "Standard Terms and Agreement" [4-ER-713-15])
  between RES International and Kanoa Resort (a hotel on the island of
  Saipan in the CNMI) to fulfill the third-party requirement. 2-ER-129-
  30. The contract was a typical third-party agreement examined by
  USCIS for assessing CW-1 petitions submitted by manpower agencies
  such as RES International. 2-ER-130-31.

Khan objected to the characterization of the document submitted in response
to the RFE as being a "contract." 2-ER-131. The district court overruled the
objection and noted the document is referenced therein as a contract, and

8

because the header reads, "Standard Terms and Agreement," and thus it was proper for Officer Verma to refer to the document as a contract. 2-ER-131-32.

On cross examination, Officer Verma testified to the following in relevant summary:

- The petition in question was purportedly signed on August 11, 2018; USCIS received the petition on August 17, 2018; USCIS issued an RFE on October 31, 2018; USCIS received a response to the RFE, and the response was dated January 23, 2019. 2-ER-152-55.

- The RFE response which contained a contract between RES International and Kanoa Resort [4-ER-713-15], listed the term of the agreement to be in effect from October 1, 2018, to September 30, 2019. 2-ER-159.

During cross examination, the Government objected to Khan's line of questioning which sought Officer Verma's understanding of the legal requirements for a contract to be valid. 2-ER-159; 2-ER-161-62. The district court sustained the objection, and instructed that the relevant inquiry was information within the contract submitted by RES International that affected the agency's decision, and not whether by operation of law the contract was legally binding. 2-ER-162.

On re-direct examination, Officer Verma testified that all three persons

9

listed as beneficiaries on the petition in question, Aminul Islam, Faroque Hosen, and Mohammad Rasel Khan, did not have lawful immigration status in the CNMI. 2-ER-183.

The Government's third witness was Faroque Hosen ("Hosen"), one of the beneficiaries on the petition in question. 2-ER-188. Hosen testified in summary:

- Hosen previously pleaded guilty to defrauding the United States. *Id*. at 192. Hosen hoped to get the benefit of a T-visa for his cooperation with the Government, but Hosen was never promised a T-visa by the prosecution or by SA Jonas. 2-ER-195. Nor was Hosen given a promise by the Prosecution for a reduced sentence. *Id*.

- Hosen received an employment authorization from Homeland Security Investigation ("HSI") after pleading guilty. 2-ER-195-96.

- Hosen is a familial relative to Khan. 2-ER-197. Khan and Islam are brothers. 2-ER-198.

- Hosen arrived at Saipan in September 2016 under a work visa with the help of Khan and Islam, and Hosen worked for Misamis Co. 2-ER-197. At that time, Hosen physically worked at Kanoa Resort. 2-ER-199. Hosen only worked for five months and then there was no more work available. *Id*.

10

- Hosen's immigration status expired in August 2017. 2-ER-200.

- After Hosen's status expired, Khan informed Hosen that Hosen could renew his CW-1 visa if Hosen paid a fee. 2-ER-201.

- In 2018, Hosen informed Khan that Hosen acquired a job offer, but Hosen needed to renew his CW-1 visa. 2-ER-205.  In response, Khan referred Hosen to a lady, named "Silva," and who Hosen now knows is Soriano. *Id*.  Hosen and two of Khan's brothers went to Soriano for help with their CW-1 visa. 2-ER-205-206.

- Khan was aware that Hosen did not have lawful immigration status when Hosen went to Soriano for assistance with a CW-1 visa. 2-ER-207.

Hosen then testified pertaining to statements made by Soriano regarding the submission of a CW-1 petition for Hosen and Khan's two brothers. 2-ER-207. Khan objected on the grounds of hearsay, and the lower court overruled the objection, citing to Fed. R. Evid. 801(d)(2), given the statements made by Soriano occurred during the conspiracy itself. 2-ER-208.

Hosen continued to testify:

- Hosen and two of Khan's brothers met Soriano at her home for an hour to discuss the CW-1 petition in question. 2-ER-207; 2-ER-211.  At this meeting, Soriano stated she could assist with a CW-1 visa, but there

11

was no jobs available, and it would cost $900 to $950 from each beneficiary. 2-ER-208. The three men each paid Soriano $950. *Id*.

- Hosen stated the certificate of employment submitted with the petition in question [4-ER-698], which purports to be a certification from Misamis Co. indicating Hosen worked as a janitor and cleaner for Misamis Co. over a three-year period was not accurate, because Hosen never worked as a janitor. 2-ER-217-18.

- Hosen met with Soriano at Soriano's home after the CW-1 petition was approved. 2-ER-220. Soriano offered Hosen the opportunity to work a couple of days for RES International at nine dollars an hour, but Soriano never offered Hosen the opportunity to work full time, i.e., 40 hours a week for a full year. 2-ER-221.

- Hosen stated he never worked for RES International. *Id*.

- After receiving CW-1 status, Hosen was never offered the opportunity to work at Kanoa Resort. 2-ER-223. Instead, Hosen found his own employment with another company. 2-ER-222.

On cross examination, Hosen admitted that he believed he may be able to get a T-visa if he was cheated by someone and did not get work. 2-ER-235. After meeting with an attorney pertaining to T-visas, in July 2020 Hosen lied to SA Jonas when Hosen claimed that Khan promised to get Hosen a visa for

$8,000. 2-ER-239-40. Hosen admitted he lied to SA Jonas when Hosen claimed Hosen lost his job because Hosen did not pay Khan $8,000. 2-ER-241.

The Government's fourth witness was Maralouisa Ernest ("Ernest"). 2-ER-305. Ernest is the Vice President of Human Resources for Asia Pacific Hotels, Inc., which runs the operation of several companies, including Kanoa Resort. 2-ER-307. Ernest was employed at Asia Pacific first in 2016 as Human Resources Director, with responsibilities similar to her current position. *Id*. Ernest testified in summary:

- Ernest has known Khan since 2005 when they both worked at a Garment company on Saipan. 2-ER-309. Ernest was never Khan's direct supervisor. *Id*. Ernest and Khan communicated in English regularly over the years, to include via E-mail. 2-ER-312.

- Ernest was shown Government's Exhibit 1 (contract between RES International and Kanoa Resort [4-ER-713]), and Ernest stated she was familiar with the document because it was sent to her via E-mail by an attorney inquiring whether Khan had authority to enter into the agreement. 2-ER-312-13. In January 2021, Kanoa Resort HR and Ernest met with Khan at the Kanoa office to investigate. 2-ER-313-14.

- At this meeting, when asked whether it was Khan's signature on the

document (contract between RES International and Kanoa Resort [4-ER-713]), Khan stated, "let me explain." 2-ER-331. Khan further stated that Khan wanted to help his relatives, and that Khan did not inform anyone at Kanoa Resort about the contract. *Id*.

- Khan acknowledged he was not authorized to sign the contract and that Khan wanted to help his brothers. 2-ER-332. Khan identified two of the beneficiaries as Khan's brothers, and one is Khan's nephew. 2-ER-333. Khan stated the three persons were able to acquire a CW-1 visa. *Id*.

- The three beneficiaries listed on Government's Exhibit were not employed by Kanoa Resort between 2018 and [March 2022]. 2-ER-338-39.

Khan objected again to the use of the word "contract." 2-ER-339. The Government then stipulated, (the contract between RES International and Kanoa Resort [4-ER-713]) was not offered as evidence of a legal contract. *Id*. The lower court overruled Khan's objection, noted the stipulation, and reiterated the document itself is labeled as "contract," and it was a proper for the witness and parties to refer to the document as such. 2-ER-341. Ernest continued:

- In September 2018, when the contract in question was purportedly

14

signed, Khan was the facilities manger of Kanoa Resort. 2-ER-344. At that time, Khan did not have authority to hire CW-1 workers on behalf of Kanoa Resort. *Id*.

As its fifth witness, the Government recalled SA Jonas to testify. 3-ER-388. SA Jonas summarized the interview he conducted with Khan on June 11, 2020:

- Khan was invited to the HSI office on Saipan where the interview was conducted with another agent present. 3-ER-389. The interview was conducted by SA Jonas per standard practice for the HSI Saipan office. 3-ER-390.

- A contracted government interpreter service was used for the interview to be conducted in Bengali with assistance by the interpreter via telephone. 3-ER-390-91.

- Once it was clear that Khan and the interpreter on the telephone understood each other, SA Jonas proceeded with the interview. 3-ER-392.

- Khan was advised of his Constitutional rights, and Khan waived those rights in writing and agreed to continue the interview. *Id*. The interpreter on the telephone was used to go line by line of the Constitutional rights waiver form that Khan signed. 3-ER-392-93.

Khan then objected on the basis of a Confrontation Clause issue pursuant to *Crawford* and its progeny. 3-ER-393. The lower court noted the issue was discussed in trial briefs, and that foundation had already been laid for use of an interpreter, conduit, and reliability. 3-ER-394. The lower court instructed that the Government could continue with questioning, with the understanding that additional foundation was required to overcome the 6th Amendment challenge, specifically the randomness and lack of control by SA Jonas to choose the individual interpreter. *Id*. The prosecution continued with questions pertaining to the use of an interpreter:

- SA Jonas called a 1-800 number, entered a code to identify his agency to the interpreter company, and then an interpreter became available via telephone for the interview. 3-ER-395.

- The interpreter was not selected by SA Jonas, but instead, a random interpreter was assigned by the contracted company which provided the interpreter services for HSI. 3-ER-395. SA Jonas does not personally participate in the vetting process of the interpreter company, which is done by his agency. 3-ER-410.

- SA Jonas reiterated the use of the interpreter was smooth, with no problems identified by the interpreter or Khan during the interview. 3-ER-405.

16

Government's Exhibit 2 was admitted into evidence, which is Khan's written

wavier of rights form. 3-ER-396. SA Jonas testified that Khan stated:

- Khan had been on Saipan for more than twenty years and that Khan

  held a CW-1 from Kanoa Resort, and Khan had to petition every year

  for a renewed CW-1 visa. 3-ER-398.

- Khan previously provided the names of Mohammad Rasel Khan,

  Aminul Islam, and Faroque Hosen to the owner of Misamis Co., so that

  Misamis Co. could submit a CW-1 petition on behalf of the three men.

  3-ER-399. Khan explained the three men were his family, two were

  brothers and Hosen was a cousin or nephew. *Id*.

- Khan admitted he later approached "Silva" (identified as Soriano) of

  RES International to assist with CW-1 petitions for the three men who

  fell out of status because they were his family. 3-ER-400-402. Soriano

  agreed to help if each paid $900. *Id*.

- Khan specifically asked Soriano to help because he wanted his family

  members to get a CW-1 visa, and Soriano agreed to help and provide

  them work if it became available, or they could find their own work. *Id*.

  at 402.

- Khan was presented a photo line-up, and Khan identified Soriano as the

  person who Khan referred to as "Silva," and who assisted Khan's

17

family members with the CW-1 petition in question. 3-ER-403.

Government's Exhibit 3, the photo line-up whereby Khan identified Soriano,

was admitted into evidence. 3-ER-404.

Following a denial of Khan's Rule 29 motion, the defense put on

evidence, in summary:

- The parties stipulated that Mr. Guang Song would have testified that Khan had a history of purchasing thousands of dollars of equipment from a hardware store on behalf of Kanoa Resort. 3-ER-451-52.

- Honesto Sevida testified that likewise, Khan made purchases at an air conditioning store on behalf of Kanoa Resort. 3-ER-456-59.

- Gocylyn Flores testified that Khan's signature was required to approve a pay raise requested by Misamis Co. for out-sourced workers supplied to Kanoa Resort by Misamis Co. 3-ER-468-75, and Appellant's Opening Br. p. 30.

Lastly, the defense called Wendi Herring, who testified in summary:

- Wendi Herring testified what while she was General Manager of Kanoa Resort, Khan performed his job well while supervising a major renovation at the resort in 2016 or 2017. 3-ER-506. Khan was permitted to select the outside hires to assist with the renovation, but everything was vetted through the Human Resources Department to

18

ensure quality and compliance with the law. 3-ER-508.

- For the renovation, Khan selected RES International and Misamis Co. as the manpower companies to provide outsourced hires. 3-ER-509. Agreements related to RES International and Misamis Co. would have been scrutinized through the Kanoa Resort Human Resources Department. 3-ER-510.

On cross examination, Herring confirmed that Khan did not have authority to bind Kanoa Resort to a contract pertaining to hiring workers, and Human Resources was required to be involved with the process. 3-ER-513. On re-direct, Herring confirmed that Khan had broad authority to identify the labor force for the renovation. 3-ER-514. In terms of payment to outsourced employees, Khan was responsible for ensuring hours billed by outsourced labor were correct. *Id*. On re-cross examination, Herring confirmed that she would have fired Khan if Herring was aware Khan hired outsourced labor from persons without immigration status. 3-ER-516.

After the defense rested, the lower court again denied Khan's renewed Rule 29 motion. 3-ER-525-27.

### 2. Final Jury Instructions

The trial court instructed the jury that to find Soriano guilty of Conspiracy to Defraud the United States, the Government had to prove

beyond a reasonable doubt that:

> First, between on or about August 1, 2018 and on or about February 11, 2019, there was an agreement between to two or more persons to defraud the United States by obstructing the lawful functions of a specific government agency, here, the U.S. Citizenship and Immigration Services, or USCIS, by deceitful or dishonest means.

> Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

> And, third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

3-ER-618-19.

### 3.    Verdict

The jury deliberated less than four hours and returned a guilty verdict the same day. 3-ER-633; 3-ER-636; 3-ER-643.

### D.    Sentencing

On March 10, 2023, Khan was sentenced to a two-year term of probation by the lower court. 1-ER-2-4.

## III.    SUMMARY OF ARGUMENT

The trial court did not abuse its discretion by allowing Faroque Hosen to testify regarding statements made to him by Soriano. This testimony was permissible under Fed. R. Evid. Rule 801(d)(2)(E) because Soriano was a

member of the conspiracy and Soriano's statements were made in furtherance and during the commission of the conspiracy.

Likewise, the trial court did not abuse its discretion by limiting the cross examination when the line of questioning turned to Officer Verma's personal knowledge of contract law. Whether Officer Verma could articulate the legal sufficiency of a contract is irrelevant; the line of questioning would have led into an unnecessary trial-within-a-trail; and Officer Verma's understanding of what gives a contract legal binding effect did not affect her credibility as a witness.

Further, Khan's appellate argument does not properly apply this Court's precedent pertaining to the framework of language conduits with use of interpreters during investigative interviews. The trial court did not abuse its discretion when applying that precedent to this case, and the prosecution was not required to put the interpreter on the stand to admit Khan's statements to SA Jonas.

Finally, the evidence in this case is overwhelming against Khan. So much so, it took less than four hours to decide Khan was guilty. Viewed in light most favorable to the Government, the sufficiency of the evidence is nowhere close to being in question. Khan's conviction should stand.

//

## IV.   ARGUMENT

**A.   Faroque Hosen's testimony regarding statements made by Halim Khan's co-conspirator was admissible under Rule 801(d)(2)(E) because the co-conspirator statements were made during and in furtherance of the conspiracy**

### 1.   Standard of Review

This Court reviews the trial court's decision to admit co-conspirator statements for abuse of discretion. *United States v. Bowman*, 215 F.3d 951, 960 (9th Cir. 2000). Factual determinations made to determine whether statements are in furtherance of a conspiracy are reviewed for clear error. *Id*.

### 2.   Background Law

For a statement to be admissible under Fed. R. Evid. Rule 801(d)(2)(E), the United States must establish that: (a) the statement was in furtherance of the conspiracy; (b) it was made during the life of the conspiracy; and (c) the defendant and the declarant were members of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Smith*, 893 F.2d 1573, 1578 (9th Cir. 1990). The United States must prove by a preponderance of the evidence that a statement is a co-conspirator declaration. *See Bourjaily*, 483 U.S. at 176; *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir. 1988).

A trial court has discretion to determine whether the United States may introduce co-conspirator declarations before establishing the conspiracy and

the defendant's connection to it. *See United States v. Loya*, 807 F.2d 1483, 1490 (9th Cir. 1987). As part of its discretion, the court may allow the United States to introduce co-conspirator declarations before laying the required foundation, under the condition that the declarations will be stricken if the United States fails to ultimately establish by independent evidence that the defendant was connected to the conspiracy. *See United States v. Spawr Optical Research, Inc.*, 685 F.2d 1076, 1083 (9th Cir. 1982).

Once a conspiracy is shown, "the [government] need only present slight evidence connecting a defendant to the conspiracy" in order to introduce an appropriate co-conspirator declaration against the defendant. *See Crespo de Llano*, 838 F.2d at 1017.

Declarations of an unindicted co-conspirator made in furtherance of the conspiracy may be used against a charged conspirator. *See United States v. Nixon*, 418 U.S. 683, 701 (1974); *United States v. Williams*, 989 F.2d 1061, 1067 (9th Cir. 1993). "The question is merely whether there was proof of a sufficient concert of action to show the individuals to have been engaged in a joint venture." *United States v. Manning*, 56 F.3d 1188, 1197 (9th Cir. 1995); *United States v. Layton*, 855 F.2d 1388, 1398 (9th Cir. 1988).

Further, the defendant need not have been present at the time the co-conspirator made the declaration. *See Sendejas v. United States*, 428 F.2d

23

1040, 1045 (9th Cir. 1970).

To be admissible under Rule 801(d)(2)(E), a statement must "further the common objectives of the conspiracy," or "set in motion transactions that are an integral part of the conspiracy." *United States v. Arambula-Ruiz*, 987 F.2d 599, 607-08 (9th Cir. 1993); *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988). Statements made with the intent of furthering the conspiracy are admissible whether or not they actually result in any benefit to the conspiracy. *See Williams*, 989 F.2d at 1068; *United States v. Schmit*, 881 F.2d 608, 612 (9th Cir. 1989); *United States v. Zavala-Serra*, 853 F.2d 1512, 1516 (9th Cir. 1988). A co-conspirator declaration need not have been made exclusively, or even primarily, to further the conspiracy, and can be admitted even if it is subject to alternative interpretations. *See Garlington v. O'Leary*, 879 F.2d 277, 284 (7th Cir. 1989).

The term "in furtherance of the conspiracy" is construed broadly. *See Yarbrough*, 852 F.2d at 1535-36. Courts "do not focus on [the statement's] actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991).

### 3. Argument

When applying the facts of Khan's case to *Bourjaily* and its progeny,

24

Hosen's testimony pertaining to Khan's co-conspirator, Soriano, squarely meets the admissibility requirement of Fed. R. Evid. Rule 801(d)(2)(E). Here, Soriano is one member of the conspiracy involving Khan, and the principle aim of the conspiracy was to acquire CW-1 visas for three of Khan's relatives.

At the outset of trial, SA Jonas testified the basis of the investigation involving Khan was the suspicion that Misamis Co. and RES International were submitting CW-1 petitions to USCIS, and these companies were merely seeking immigration status for foreign citizens for a profit without employing the beneficiaries of CW-1 petitions as required. 2-ER-80-84. The specific CW-1 petition at issue in Khan's trial was admitted as Government's Exhibit 1. 2-ER-84-87 (*see* 4-ER-648-717 for the petition in question).

This petition was for three named beneficiaries, Aminul Islam, Faroque Hosen, and Mohammad Rasel Khan (*see* 4-ER-713), identified by Hosen as relatives to Khan. 2-ER-198. Hosen identified the beneficiaries as relatives to Khan prior to Hosen's testimony regarding Soriano's statements. *Id*. The contract submitted with the petition to prove the beneficiaries would be employed by RES International while working at Kanoa Resort contains a signature block for Soriano, thus directly tying Soriano to the fraudulent petition. *See* 4-ER-715.

Hosen testified that he asked Khan for assistance with renewing

Hosen's CW-1 visa because Hosen's visa expired. 2-ER-201; 2-ER-205. In response, Khan referred Hosen to Soriano, and in 2018, Hosen along with Khan's two brothers went to Soriano for assistance. 2-ER-205-207; 2-ER-211.

Khan objected on hearsay grounds when Hosen began to describe what Soriano said during the meeting between Hosen, Khan's two brothers, and Soriano. 2-ER-207. The lower court properly overruled the objection citing to Fed. R. Evid. Rule 801(d)(2), because Soriano's statements were "made at the time the event occurred and during the conspiracy itself[.]" 2-ER-208.

The prongs of *Bourjaily* were thus satisfied at that point of the testimony because, first, Soriano's statements were relative to how the conspiracy would be accomplished. Namely, that the beneficiaries would pay Soriano $950 each, and Soriano would submit the petition via RES International to get the three men CW-visas, and yet the petition would be submitted while Soriano acknowledged there was no actual employment available for the beneficiaries. *See* 2-ER-208. Further, it was already established from earlier testimony of Officer Verma, that the cost of the CW-1 petition for the three beneficiaries was $1,110. 2-ER-110. Given Soriano charged the three beneficiaries $950 each, or $2,850 total, Soriano's statement established Soriano would make an approximate $1,700 profit for assisting with the fraudulent petition submission.

26

The second prong of *Bourjaily* is satisfied because Soriano's statement was made during the meeting with the beneficiaries and the purpose of the meeting was to coordinate details, to include payment, of the fraudulent CW-1 petition. The third prong of *Bourjaily* is satisfied because this meeting happened when Khan, a co-conspirator, led Hosen and the two brothers to Soriano, another co-conspirator of the scheme and the declarant of the statements admitted via Hosen's testimony.

Even assuming *arguendo*, that Hosen's testimony regarding Soriano's statements was admitted pre-maturely, the error was harmless. The trial court has discretion to admit co-conspirator declarations even before all necessary foundation is laid, on condition the declarations are stricken if later evidence does not establish the defendant is connected to the conspiracy. *Spawr Optical Research Inc.*, 685 F.2d at 1083.

Here, Khan's connection to the conspiracy was further established with later testimony by Ernest and SA Jonas. Ernest testified that he confronted Khan about the purported contract between Kanoa Resort and RES International. 2-ER-331. When confronted whether Khan signed the contract, Khan admitted to Ernest that Khan was not authorized to sign the contract, and that Khan wanted to help his relatives get a CW-1 visa. 2-ER-331-33.

SA Jonas testified that Khan admitted to connecting Soriano to the three

beneficiaries, and Soriano agreed to help if each man paid $900. 3-ER-400-402. Khan further admitted that Soriano agreed to provide work for the beneficiaries if Soriano could, or the three men could find their own work. 3-ER-402. Thus, collectively between the testimony of Officer Verma, Hosen, and later testimony of Ernest and SA Jonas, all requirements of Fed. R. Evid. Rule 801(d)(2)(E) were satisfied to admit Hosen's testimony of a co-conspirator's statement.

### B.    The limitation of Khan's cross examination of Officer Verma did not violate the Confrontation Clause

#### 1.    Standard of Review

This Court reviews Confrontation Clause challenges pertaining to the limitation of cross examination *de novo*. *United States v. Singh*, 995 F.3d 1069, 1080 (9th Cir. 2021); *United States v. Larson*, 495 F.3d 1094, 1101 (9th Cir. 2007). Further, this Court reviews "[a] challenge to a trial court's restrictions on the manner or scope of cross-examination on nonconstitutional grounds" for an abuse of discretion. *Larson*, 495 F.3d at 1101.

#### 2.    Background Law

*United States v. Mikhel* provides the test for when restrictions on cross-examination become sufficiently extensive to raise Confrontation Clause concerns that may undermine the fairness of a trial. 889 F.3d 1003, 1048 (9th Cir. 2018). Under *Mikhel*, the inquiry is "(1) whether the excluded evidence

28

was relevant; (2) whether there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and (3) whether the exclusion of evidence left the jury with sufficient information to assess the witness's credibility." *Id*. (citing *Larson*, 495 F.3d at 1103).

### 3. Argument

The trial court was correct to limit the cross examination of Officer Verma when the line of questioning turned into an inquiry of Officer Verma's opinion regarding the legalities of a binding contract. Such an inquiry was irrelevant to the proceeding, it would have led to confusion and an unnecessary distraction, and it had no bearing on Officer Verma's credibility.

During the direct examination, Officer Verma was shown Government's Exhibit 1 (the petition in question) and was asked to review a document within the petition titled "Standard Terms and Agreement" found at 4-ER-713-15 within the exhibit. 2-ER-129-30. This three-page document was the purported contract between RES International and Kanoa Resort. *Id*. During the testimony, Khan objected to the characterization of the document as a "contract." *Id*. at 131.

With this objection it became apparent that one of Khan's defenses would be that he could not be found guilty of Conspiracy to Defraud the United States, because the contract relied upon by USCIS to assess CW-1

eligibility was not legally binding. *See* Appellant's Opening Br. pp. 50-51. However, as the lower court noted when overruling the objection, Officer Verma understandably referred to the document as a contract because the document itself was labeled "contract" within, and the header was titled "Standard Terms and Agreement." 2-ER-130-32. Further, as articulated *infra*, whether the contract had actual legal affect was not a material fact the jury required to convict Khan. *See* "Final Jury Instructions" at 3-ER-618-20.

During cross examination, the defense again attempted to dive into the legal validity of the "contract" by inquiring into Officer Verma's understanding of contract law. 2-ER-162. The defense asked, "And a contract is a mutual obligation between parties; is that what you understand it?" *Id*. The district court sustained the prosecution's objection to that question, and the court noted:

> What is relevant here is in regards to what would impact the agency, that's one of the elements here. And you're talking about a contract, not an advertisement, not some of the other items that was testified to. So the witness has described a contract. In regards to what forms a contract by law is one issue, but for the witness and how she applied the documents that were [transmitted to her]… and what they're looking for, that will be relevant []… you can save the arguments for later on regarding law.

2-ER-162. This ruling to limit the cross examination of Officer Verma is in line with *Mikhel's* three prongs.

30

First, it is irrelevant whether Officer Verma could articulate contract law. Her testimony was offered to provide background into the CW-1 program, and to discuss how the materials contained within the fraudulent petition in question would be assessed by USCIS. Further, whether the contract was valid is immaterial to the jury's decision to convict Khan. In fact, it is undisputed the contract is fraudulent. The prosecution introduced the contract as evidence because it was part of the scheme by the conspirators to unlawfully petition for CW-1 visas.

Officer Verma testified to her perception, as a lay witness, of what the document purported to be – a contract. To open a line of questioning regarding Officer Verma's personal expertise to assess the validity of contracts, would set conditions for an unnecessary trial-within-a-trial. Like *Mikhel*, under the second prong it was well within the trial court's discretion to mitigate this unnecessary distraction. *See Mikhel*, F.3d at 1048.

Lastly under the *Mikhel* standard, whether or not Officer Verma could explain contract law did not affect the jury's ability to assess her credibility as a witness. Officer Verma testified at length [2-ER-98-184], and in detail covering a wide spectrum of information pertaining to the CW-1 program – and to include an examination of Government's Exhibit 1, the petition in question. Questions were asked and answered regarding the contents of the

31

contract, to include Officer Verma's understanding of the terms and dates for which the contract would be in effect. 2-ER-158-59. Notwithstanding an irrelevant inquiry into Officer Verma's understanding of contract law, the jury had more than enough of an opportunity to assess Officer Verma's credibility.

Given this Court's test under *Mikhel*, the trial court did not abuse its discretion to limit cross examination of Officer Verma. 889 F.3d at 1048.

## C. The Prosecution was not required to call a translator as a witness to admit the statements of Khan to SA Jonas

### 1. Standard of Review

"The trial court has broad discretion in determining the fitness and qualifications of interpreters[.]" *Chee v. United States*, 449 F.2d 747, 748 (9th Cir. 1971). In reviewing an evidentiary ruling for abuse of discretion, this Court "consider[s] whether the decision was based on relevant factors and whether there was a clear error of judgment," and the ruling will only be reversed if it "lies beyond the pale of reasonable justification under the circumstances." *United States v. Hollis*, 490 F.3d 1149, 1152-53 (9th Cir. 2007) (internal citations omitted). Factual findings underlying an admission decision are reviewed for clear error. *United States v. Garcia*, 16 F.3d 341, 343 (9th Cir. 1994).

### 2. Background Law

"[A]s long as a translator acts only as a language conduit; the use of the

translator does not implicate the Confrontation Clause." *United States v. Aifang Ye*, 808 F.3d 395, 401 (9th Cir. 2015). Whether statements made through an interpreter should be considered statements of the original declarant "require[s] an analysis of the facts on a case-by-case basis." *Garcia*, 16 F.3d at 342. *See also Nazemian*, 948 F.2d at 527 ("The better approach is to consider on a case-by-case basis whether the translated statements fairly should be considered the statements of the speaker."). Generally, this Court considers "(1) which party supplied the interpreter, (2) whether the interpreter had any motive to mislead or distort, (3) the interpreter's qualifications and language skill, and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated." *United States v. Romo-Chavez*, 681 F.3d 955, 959 (9th Cir. 2012).

### 3. Argument

The Government re-called SA Jonas to testify regarding statements made by Khan at an interview with SA Jonas at the HSI office. 3-ER-388-89. For this interview, SA Jonas relied upon the use of an interpreter to communicate with Khan in the Bengali language. 3-ER-390-91. Khan asserts by not calling the interpreter to testify at trial, this implicates hearsay and Confrontation Clause issues. *See* Appellant's Opening Br. p. 51. However, the lower court did not abuse its discretion by admitting the testimony of SA

Jonas, given this Court's holding in *Nazemian*. 948 F.2d at 526.

SA Jonas did not select the specific interpreter to be used for the interview with Khan. 3-ER-395. Instead, SA Jonas called a 1-800 number to contact the interpreter language service contracted by HSI to facilitate the interview. *Id*. In *Ye*, this Court determined that the on-demand telephonic interpreter provided by the Government "does weigh in [the defendant's] favor[.]" *Ye*, 808 F.3d at 401. Importantly, however, this Court reiterated "we have held that this factor is 'never dispositive.'" *Id*. (citing *Romo-Chavez*, 681 F.3d at 959). Although SA Jonas provided the interpreter for the interview, which favors Khan's position here, there is no evidence the random interpreter assigned by telephone had a prior relationship with government agents conducting the interview.

Further, there is no evidence the interpreter had motive to mislead or distort the interview; nor is there evidence the interpreter was not qualified. In fact, SA Jonas testified that during the interview there were no complaints by Khan or the interpreter, and the interview was smooth. 3-ER-405. To satisfy the language conduit of *Ye*, it was unnecessary for SA Jonas to personally know the interpreter or to be familiar with the interpreter's personal qualifications. *See* 808 F.3d at 401. Thus, it was sufficient that SA Jonas relied on the interpreter as a language conduit, satisfying both hearsay and

Confrontation Clause requirements.

### D.    The Government's evidence was legally sufficient

#### 1.    Standard of Review

Rulings relating to the sufficiency of the evidence are reviewed *de novo* and follow the "two-step inquiry" set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *See also United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc).  First, this Court must consider the evidence presented at trial in the light most favorable to the prosecution, presuming that the trier of fact resolved all potentially conflicting inferences in favor of the prosecution and deferring to that resolution.  *Nevils*, 598 F.3d at 1164.  Then, at the second step, this Court "must determine whether this evidence, so viewed, is adequate to allow ***any*** rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt."  *Id*. (emphasis in original) (internal quotations omitted).

The Supreme Court has made clear that "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts."  *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (internal quotations omitted).  The Court has even gone so far as to characterize "the only question under *Jackson* is whether [the jury's verdict is] so insupportable

35

as to fall below the threshold of bare rationality." *Id.* at 656. Accordingly, this Court may find the evidence insufficient only in those rare instances, for example, where "mere speculation, rather than reasonable inference," supports the prosecution's case, or when there is a "total failure of proof of [a] requisite element." *Nevils*, 598 F.3d at 1167 (internal quotation omitted).

## 2.  Statute and Essential Elements

The Conspiracy to Defraud the United States statute in relevant part provides:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371.

According to this Court's 2022 model criminal jury instructions at the time of trial, the elements of the offense are:

> First, beginning on or about [date], and ending on or about [date], there was an agreement between two or more persons to defraud the United States by obstructing the lawful functions of [specify government agency] by deceitful or dishonest means as charged in the indictment;
>
> Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

36

Third, one of the members of the conspiracy performed at least one overt act [on or after [date]] for the purpose of carrying out the conspiracy, with all of you agreeing on a particular overt act that you find was committed.

Ninth Circuit Manual of Model Criminal Jury Instructions (2022) ("Model Instructions") No. 11.2.[4]  The Model Instructions further state:

An agreement to defraud is an agreement to deceive or cheat.

A conspiracy is a kind of criminal partnership—an agreement of two or more persons to commit one or more crimes. The crime of conspiracy is the agreement to do something unlawful; it does not matter whether the crime agreed upon was committed.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed on every detail of the conspiracy.  It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another.  You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit.

One becomes a member of a conspiracy by willfully participating in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy, even though the person does not have full knowledge of all the details of the conspiracy. Furthermore, one who willfully joins an existing conspiracy is as responsible for it as the originators.  On the other hand, one who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator.  Similarly, a person does not become a conspirator merely by associating with one or more

---

[4] These instructions are the same as those given by the district court in this case. S*ee* 3-ER-618-19.

persons who are conspirators, nor merely by knowing that a conspiracy exists.

An overt act does not itself have to be unlawful. A lawful act may be an element of a conspiracy if it was done for the purpose of carrying out the conspiracy. The government is not required to prove that the defendant personally did one of the overt acts.

*See* Model Instructions 11.2. These instructions were also given by the district court in this case, except language from the 11.2 Model Instruction comments were incorporated as follows, and emphasized with italics:

> *An agreement to defraud is an agreement to deceive or to cheat. But one who acts on an honest and good faith misunderstanding as to the requirements of the law, does not act with an intent to defraud simply because his understanding of the law is wrong or even irrational. Nevertheless, merely disagreeing with the law does not constitute a good faith misunderstanding of the law because all persons have a duty to obey the law whether or not they agree with it.*

S*ee* 3-ER-618-19.

## 3. Argument

At trial, the Government called four witnesses in its case-in-chief and admitted three exhibits. 3-ER-554-55. Collectively, the witnesses provided an overview of the CW-1 Program, and showed how RES International petitioned for foreign beneficiaries to obtain legal immigration status while misrepresenting that those beneficiaries would be working for RES International. Rather, this was a scheme merely for foreign citizens to obtain immigration status, with RES International making a profit from it.

38

The evidence showed Khan and Soriano worked together to submit a fraudulent CW-1 petition on behalf three Bangladeshis, the beneficiaries, Aminul Islam, Faroque Hosen, and Mohammad Rasel Khan. Soriano agreed to facilitate the submission of the CW-1 petition for the beneficiaries because there was a profit to be made, and Khan agreed to participate because he wanted to help his family members.

Not only did Khan introduce the beneficiaries to Soriano, but Khan manufactured a fraudulent third party contract submitted with the petition purporting the three beneficiaries would be employed by RES International and work at the Kanoa Resort. There were plenty of overt acts in furtherance of the conspiracy, to include payment to RES International by the beneficiaries, mailing of the CW-1 petition to USCIS, the manufactured and fraudulent contract, and fraudulent employment records such as Hosen's employment certificate falsely indicating he worked as a janitor.

The jury heard and weighed the evidence and rendered a verdict of guilty in less than four hours of deliberation. With evidence viewed in favor of the prosecution, this Court should uphold the jury's verdict.

//

//

//

## V.    CONCLUSION

For the reasons given above, Soriano's conviction should be affirmed.

Respectfully submitted on December 27, 2023 (ChST).

SHAWN N. ANDERSON
United States Attorney

By:    */s/ Albert S. Flores, Jr.*
ALBERT S. FLORES, JR.
Assistant United States Attorney

40

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 27, 2023 (ChST), I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.  I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Albert S. Flores, Jr.*
ALBERT S. FLORES, JR.
Assistant United States Attorney

## <u>CERTIFICATE AS TO RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6(a), I certify that, as of December 27, 2023 (ChST), I am not aware of any related cases now pending before the Ninth Circuit that may be deemed related to this one.

*/s/ Albert S. Flores, Jr.*
ALBERT S. FLORES, JR.
Assistant United States Attorney

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(a)(7), I certify that, as of December 27, 2023 (ChST), this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,145 words.

*/s/ Albert S. Flores, Jr.*
ALBERT S. FLORES, JR.
Assistant United States Attorney