APPEAL NO. 23-480

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

HALIM KHAN

Defendant-Appellant.

_____

FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

District Court No. 1:20-cr-0007-RVM-2

_____

**REPLY BRIEF OF APPELLANT**

_____

Bruce Berline, Esq.
LAW OFFICE OF BRUCE BERLINE, LLC
Second Floor, Macaranas Building, Beach Road, Garapan
P.O. Box 5682 CHRB
Saipan, Northern Mariana Islands 96950
Telephone: (670) 233-3663
Fax: (670) 233-5262
Email: Bberline@gmail.com

Attorney for Defendant-Appellant Halim Khan

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES................................................................ iv

I. INTRODUCTION.......................................................................... 1

II. ARGUMENT.................................................................................. 3

  A.  THE GOVERNMENT FAILED TO PRODUCE SUFFICENT EVIDENCE TO ADMIT MS. SORIANO'S HEARSAY............................................................................... 3

    1.  The Government is required to show more than "slight evidence" that Mr. Khan was connected to a conspiracy to justify an exception to hearsay under *Bourjaily*................................... 3

    2.  The Government did not prove under the preponderance of evidence a conspiracy to defraud USCIS or that Mr. Khan participated in a conspiracy to defraud USCIS. .................................. 5

  B.  THE GOVERNMENT MISREPRESENTED THE DEFENSE'S CROSS-EXAMINATION OF OFFICER VERMA. ................................................................................ 8

  C.  THE GOVERNMENT DID NOT PROVE THAT AN UNKNOWN TRANSLATOR WAS A CONDUIT FOR MR. KHAN. ................................................................................ 11

  D.  THE GOVERNMENT DID NOT POINT TO ANY EVIDENCE THAT PROVED MR. KHAN AGREED TO A CONSPIRACY. .................................................................. 13

    1.  The Government abandoned its sufficiency of evidence argument because it lacked any references to the record or authorities............................................................................. 13

    2.  Mr. Khan's Opening Brief explained why the Government's evidence could not support the lower court's verdict. ......................... 14

III. CONCLUSION ............................................................................ 17

CERTIFICATE OF COMPLIANCE ................................................................... 18

PROOF OF SERVICE ............................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*Badgley v. United States*, 957 F.3d 969 (9th Cir. 2020) ......................................... 13

*Crime Justice & America, Inc. v. Honea*, 876 F.3d 966 (9th Cir. 2017) ...... 7, 13, 14

*Greenwood v. FAA*, 28 F.3d 971 (9th Cir. 1994) .................................................... 14

*Kuba v. 1-A Arg. Ass'n*, 387 F.3d 850 (9th Cir. 2004) ....................................... 7, 13

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) ................................................... 7, 13

*United States v. Aifang Ye*, 808 F.3d 395 (9th Cir. 2015) .................................. 2, 11

*United States v. Bourjaily*, 483 U.S. 171 (1987) ................................................. 1, 4

*United States v. Crespo de Llano*, 838 F.2d 1006 (9th Cir. 1988) ...................... 4, 5

*United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010) ............................................ 13

*United States v. Ionutescu,* 752 F. Supp. 2d 1091 (D. Ariz. 2009) ........... 14, 15, 16

*United States v. Licciardi*, 30 F.3d 1127 (9th Cir. 1994) ...................................... 15

*United States v. Lopez*, 937 F.2d 716 (2d Cir. 1991) ............................................. 12

*United States v. Mason*, 658 F.2d 1263 (9th Cir. 1981) .......................................... 4

*United States v. Nazemian*, 948 F.2d 522 (9th Cir. 1991) .................................. 2, 11

*United States v. Singh*, 995 F.3d 1069 (9th Cir. 2021) ............................................ 9

*United States v. Woodland*, No. CR 05-00668(A)–MMM, 2007 WL
9706767 (C.D. Cal. Jan. 9, 2007) ......................................................................... 4

**Rules**

Fed. R. App. Proc. 28(a)(8)(A)............................................................ 7, 13

Fed. R. App. Proc. 28(b)..................................................................... 7, 13

## I. INTRODUCTION

Defendant-Appellant Halim Khan ("Mr. Khan") respectfully submits this reply brief in further support of his appeal from the Judgment of the United States District Court for the Northern Mariana Islands.

First, the Government misapplied the standard for justifying out-of-court statements from an alleged co-conspirator set forth in *United States v. Bourjaily*, 483 U.S. 171, 175 (1987). The Government attempted to satisfy the first and second prongs of *Bourjaily*, that the out-of-court statements were made in furtherance and during the life of a conspiracy, by relying on testimony from a witness who had already lied under oath multiple times and was motivated to continue lying. (Answer at 26). The Government also claimed it could prove Mr. Khan's criminal intent with "slight evidence" that Mr. Khan was connected to a conspiracy. (*Id.* at 24, 27). But the Government's proposition is not supported by *Bourjaily*, which made it clear that the appropriate standard for proving a defendant's connection to a conspiracy is the preponderance of evidence. *Bourjaily*, 483 U.S. at 175. Here, the Government could not prove Mr. Khan had even a slight connection to a conspiracy. (Opening Brief at 30–39). The Government's assertion that it proved Mr. Khan's connection to a conspiracy was vague and was made without any citation to the law or the record. (Answer at 27).

1

Second, the Government's argument—that the Defense's cross-examination of Senior Immigration Services Officer Verma ("Officer Verma") was irrelevant and unnecessary—misinterpreted the Defense's cross-examination of Officer Verma. (*Id.* at 29–32). Contrary to the Government's claims, the Defense did not ask Officer Verma about her knowledge of contract law for the sole purpose of helping the jury evaluate her legal expertise on contract law. Rather, the purpose of this cross-examination was to evaluate if an employment document had any material influence over USCIS' judgment at all. (Opening Brief at 42–45). The employment document was the Government's only physical evidence of Mr. Khan's alleged criminal intent, so the Defense's questions to Officer Verma about the employment document were necessary for and relevant to Mr. Khan's defense.

Third, the Government misapplied the standard for admitting out-of-court statements made by a translator under both *United States v. Nazemian*, 948 F.2d 522, 527 (9th Cir. 1991) and *United States v. Aifang Ye*, 808 F.3d 395, 401 (9th Cir. 2015). The Government claimed that under *Aifang Ye*, it did not need to prove Special Agent Frederic Jonas ("SA Jonas") personally knew his interpreter. (Answer at 34). But this statement dodged the relevant issue: Whether the lower court could evaluate the translator's qualifications. Here, the lower court did not even know who the translator was, let alone what the translator's qualifications were. Further, the Government wrongfully inferred that SA Jonas' unknown translator had no motive

2

to mislead or distort just because Mr. Khan did not complain about the translation. (*Id.*). However, given the lack of any information about the translator, the Government and the lower court could only speculate that Mr. Khan felt comfortable enough to correct SA Jonas' translator. This speculation wrongfully ignored the major power discrepancy between Mr. Khan and SA Jonas.

Finally, the Government did not explain what evidence supported the lower court's verdict. The Answering Brief is replete with assertions that the Government proved a conspiracy to defraud USCIS and that Mr. Khan willfully participated in the alleged conspiracy. (Answer at 38–39). However, the Government's Answering Brief failed to point to any evidence to support these assertions, and thus the Government abandoned its sufficiency of evidence argument. Even if the Government's argument was not abandoned, the Government would still not be able to point to any evidence that could support the lower court's verdict.

## II. ARGUMENT

A. THE GOVERNMENT FAILED TO PRODUCE SUFFICENT EVIDENCE TO ADMIT MS. SORIANO'S HEARSAY.

*1.    The Government is required to show more than "slight evidence" that Mr. Khan was connected to a conspiracy to justify an exception to hearsay under* Bourjaily.

The Government claimed that, after proving the existence of a conspiracy, the Government only needed "slight evidence" a defendant was connected to the

conspiracy before the lower court could admit out-of-court statements from an alleged co-conspirator. (Answer at 23). The Government took this standard from *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir. 1988) (quoting *United States v. Mason*, 658 F.2d 1263, 1269 (9th Cir. 1981)): "Once a conspiracy is shown, 'the [government] need only present slight evidence connecting a defendant to the conspiracy' in order to introduce an appropriate co-conspirator declaration against the defendant." (Answer at 23).

While the Ninth Circuit has frequently described the standard of a defendant's connection to a conspiracy as only a "slight connection" or "slight evidence," the Supreme Court has long held that the correct standard is preponderance of evidence. *See Bourjaily*, 483 U.S. at 176; *United States v. Woodland*, No. CR 05-00668(A)–MMM, 2007 WL 9706767, at *6 n.29 (C.D. Cal. Jan. 9, 2007) (unpublished) (collecting cases) (cautioning that the "slight evidence" proposition from *Crespo de Llano* misconstrues Ninth Circuit precedent after *Bourjaily*) (citing *Crespo de Llano*, 838 F.2d at 1017). Even in *Crespo de Llano*, the Government's proof that a defendant participated in a conspiracy to sell drugs was more than "slight." *Crespo de Llano*, 838 F.2d at 1006, 1017. There, the Government provided first-hand evidence that the defendant possessed drugs, negotiated the sale of drugs to an undercover agent, and offered the agent a drug sample. *Id.*

Under the appropriate preponderance of evidence standard, the Government must prove that it *was more likely than not* that a Defendant was connected to a conspiracy. In *United States v. Castaneda*, this Court distinguished *Crespo de Llano* and rejected the Government's use of a co-conspirator's hearsay because this Court determined the Government's evidence was "equivocal." *Castaneda*, 16 F.3d at 1509. The *Castaneda* Court reasoned that while it was possible for a jury to infer the Defendant's connection to a conspiracy, it was equally possible to infer the Defendant was not connected to the conspiracy. *Id.* This Court reasoned, "In cases where we have determined that the independent evidence was adequate [such as *Crespo de Llano*], the evidence has been much more incriminating." *Id.* (citing *Crespo de Llano*, 838 F.2d at 1006, 1017).

Here, the Government is required to prove it was more likely than not that Mr. Khan agreed to join a conspiracy to defraud USCIS. "Slight evidence" is not enough. *Id.* As explained below, the Government did not meet this burden.

> 2. *The Government did not prove under the preponderance of evidence a conspiracy to defraud USCIS or that Mr. Khan participated in a conspiracy to defraud USCIS.*

The Government's Answering Brief failed to explain how its evidence justified an exception to hearsay. The Government did not satisfy the first or second prongs of *Bourjaily*, that the hearsay in question was made in furtherance and during the life of a conspiracy, because the Government's only preliminary evidence of a

conspiracy was Faroque Hosen's ("Mr. Hosen") testimony (Answer at 26). Mr. Hosen had already lied under oath several times and had plainly demonstrated that he was readily motivated and quite willing to distort his testimony in the Government's favor. (Opening Brief at 32–34). The only evidence the Government pointed to corroborate Mr. Hosen's testimony was the cost of a CW-1 petition, which was roughly covered by what Mr. Hosen claimed was Ms. Soriano's fee. (Answer at 26). However, this evidence does not unequivocally prove Ms. Soriano or Mr. Hosen ever participated in a conspiracy to defraud USCIS. (Opening Brief at 32–34). It is just as likely that Mr. Hosen lied, as he had in the past, and testified about a made-up fee that happened to be close to the actual cost of a CW-1 petition. (*Id.* at 31–34). Further, the Government did not offer any evidence after the lower court admitted Ms. Soriano's hearsay that could prove it was more likely than not that a conspiracy to defraud USCIS existed. (*Id.* at 34–39). Because the entirety of the Government's proof that a conspiracy existed was equivocal, the lower court should not have admitted Ms. Soriano's hearsay. *See Castaneda*, 16 F.3d at 1509.

Further, the Government's claim that it satisfied the third prong of *Bourjaily*, that the Defendant and Declarant were members of a conspiracy, is only supported by vague allegations that lack any support from the law or record. (Opening Brief at 31–34). The Government's Answering Brief merely asserted that Mr. Khan was a co-conspirator, and that he "led Hosen and the two brothers to Ms. Soriano."

(Answer at 27). What does "he led Hosen and the two brothers to Ms. Soriano" even mean? Is the Government claiming it proved Mr. Khan merely introduced his family to Ms. Soriano or that he introduced them for the purpose of initiating a criminal conspiracy? Moreover, these vague statements lack any reference to legal authorities or parts of the record. (*Id.*).

Federal Rules of Appellate Procedure 28(a)(8)(A) and 28(b) require an appellee's brief to contain the appellee's "contentions and reasons for them, with citations to the authorities and parts of the record on which the [appellee] relies."[1] "Issues raised in a brief which are not supported by argument are deemed abandoned." *Crime Justice & America, Inc. v. Honea*, 876 F.3d 966, 978 (9th Cir. 2017) (internal quotation marks omitted) (quoting *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988)). *See also Kuba v. 1-A Arg. Ass'n*, 387 F.3d 850, 855 n.5 (9th Cir. 2004) (explaining appellant's requirement to back contentions with reasons and citations to authorities and record also applies to appellees) (citing Fed. R. App. Proc. 28(b)). Because the Government did not cite to any legal authorities or excerpts of the record to support its assertion that it satisfied the third prong of *Bourjaily*, the Government abandoned this argument. *Id.*

---

[1] Federal Rule of Appellate Procedure 28(a)(8)(A) applies to appellees under Rule 28(b). Fed. R. App. Proc. 28(b).

Regardless, the Government would not have satisfied *Bourjaily* even if it proved Mr. Khan "led" his family to Ms. Soriano. Although it may be possible to speculate that Mr. Khan "led" his family to Ms. Soriano so that she could help his family defraud USCIS, it could be just as likely that Mr. Khan led his family to Ms. Soriano so that she could legally guide his family through a complicated CW-1 process. Thus, like *Castaneda*, this evidence would be too "equivocal" to allow the lower court to admit hearsay. *Castaneda*, 16 F.3d at 1509.

The Government's Answering Brief did not point to any evidence that could justify a *Bourjaily* exception for hearsay. Accordingly, the lower court should not have allowed the Government to admit Ms. Soriano's out-of-court statements.

## B. THE GOVERNMENT MISREPRESENTED THE DEFENSE'S CROSS-EXAMINATION OF OFFICER VERMA.

The Government incorrectly claimed that the Defense's cross-examination of Officer Verma was solely about her legal expertise. (Answer at 9, 31). The Defense's questions were actually to evaluate Officer Verma's statement that USCIS looks at contracts to verify that a petitioner and a beneficiary have an employer-employee relationship. 2-ER-104. (Opening Brief at 44–45). Officer Verma and the Prosecution repeatedly called—in front of the jury—an employment document ("the Purported Contract") a contract, which prematurely established the Purported Contract as the same kind of document that could establish an employee-employer relationship in a CW-1 petition. (*Id.* at 40–43). The Purported Contract was the

Government's only physical evidence that Mr. Khan had any intent to defraud USCIS. (*Id.* at 44). Accordingly, it was critical for the Defense to question Officer Verma about what she meant when she called something a "contract" to clear up what effect the Purported Contract had on USCIS. (*Id.* at 45). *C.f. United States v. Singh*, 995 F.3d 1069, 1080 (9th Cir. 2021) (limiting Defendant from asking a witness about unrelated crimes for the sole purpose of proving the witness was unreliable). The Defense explained their intention for the cross-examination at trial, 2-ER-161, and in Mr. Khan's Opening Brief, (Opening Brief at 44–45). However, the Government's Answering Brief did not address this argument. (Answer at 31).

Moreover, the Government claimed the Defense's cross-examination was not necessary because Officer Verma testified that she perceived the Purported Contract as a contract. (*Id.* at 31). However, this statement was unclear because it did not explain why she thought the Purported Contract could convince a USCIS officer that a valid employee-employer relationship existed. (Opening Brief at 44). The Government claimed that Officer Verma answered questions about "the contents of the contract," and explained her "understanding of the terms and dates for which the contract would be in effect." (Answering Brief at 32) (citing 2-ER-158–59). But the lower court only allowed Officer Verma to answer questions about terms and dates on the manpower supply agreement—not the Purported Contract. 2-ER-158–61. Without sufficient cross-examination, the lower court limited the jury's ability to

9

evaluate Officer Verma's testimony about a material piece of evidence. (Opening Brief at 44). Moreover, the Government refused to stipulate that the Purported Contract was not a legal contract, 2-ER-339–41, which indicates that even the Government thought the legality of the Purported Contract was relevant and important.[2] Hence, the Defense's cross-examination of Officer Verma was necessary to help the jury evaluate Officer Verma's statements about the Government's only physical evidence of Mr. Khan's alleged criminal intent. (*Id.*).

Mr. Khan's cross-examination of Officer Verma was relevant and necessary to clear up the Prosecution's prejudicial assumption that the Purported Contract could fraudulently influence USCIS. Thus, the lower court violated Mr. Khan's Sixth Amendment right to confrontation by limiting the Defense's cross-examination of Officer Verma.

---

[2] The Government claimed that, at trial, it stipulated that the Purported Contract "was not entered as evidence of a legal contract" and that the lower court "noted the stipulation." (Answer at 13) (citing 2-ER-339). This statement is not supported by the record. While the lower court proposed a stipulation that the Purported Contract was not a legal contract, 2-ER-339, the Government refused this stipulation, *id.* at 40–41. Moreover, the Government claimed that it was undisputed that the [Purported Contract] was fraudulent." (Answer at 31). Again, the Government did not cite to any part of the record that supports statement. (*Id.*; *see infra* § D(1) regarding the requirement to support claims with citations to the record).

C.    THE GOVERNMENT DID NOT PROVE THAT AN UNKNOWN TRANSLATOR WAS A CONDUIT FOR MR. KHAN.

Because the Government had no substantial information about the translator SA Jonas used to interview Mr. Khan, the lower court assumed without proof that the translator was a conduit for Mr. Khan. (Opening Brief at 47–48).

The Government's Answering Brief improperly relied on *Aifang Ye* to claim, "[I]t was unnecessary for SA Jonas to personally know the interpreter or to be familiar with the interpreter's personal qualifications. (Answer at 33–34). But *Aifang Ye* did not establish that it was "unnecessary" for a government agent to personally know their interpreter, rather in that case the Government satisfied the third *Nazemian* factor by providing evidence of its translators' qualifications. *Aifang Ye*, 808 F.3d at 401. In fact, in *Aifang Ye*, a "compelling" factor for the Government was the fact that the Government "provided evidence that all of the translators had native fluency" in the Defendants' language. *Id.* Here, the Government did not provide any evidence that SA Jonas' unknown translator was qualified to translate for Mr. Khan. (Opening Brief at 47–48). Accordingly, the qualifications factor weighs against the Government. (*Id.*) *See Nazemian*, 948 F.2d at 527.

In fact, none of the other *Nazemian* factors weighed in the Government's favor. The Government assumed that SA Jonas' unknown translator had no motive to mislead or distort Mr. Khan's statements just because "during the interview there were no complaints by Khan or the interpreter, and the interview was smooth."

(Answer at 34). However, the Government's argument wrongfully assumed that Mr. Khan would have corrected any of the translator's mistakes. At the time of the interview, Mr. Khan was already indicted, 3-ER-347–48, and surely knew SA Jonas had significant power to influence his criminal case. Mr. Khan may have been too intimidated to correct someone who appeared to be SA Jonas' colleague, even if the translator distorted the translation. Mr. Khan was shaking and in tears when he was confronted by his former supervisor, 3-ER-370, and there is no reason to assume Mr. Khan felt more assertive when he was interviewed by SA Jonas. Comparatively, the court in *United States v. Lopez*, 937 F.2d 716, 724 (2d Cir. 1991) inferred that a defendant could have corrected any mistakes made by his translator because the defendant and his translator were co-conspirators. Here, the Government should not have assumed that an unknown translator's work was accurate just because Mr. Khan did not raise any objections.

Because the Government's *Nazemian* argument relied on faulty assumptions and a misleading interpretation of *Aifang Ye*, the Government's Answering Brief did not prove SA Jonas' unknown translator was a conduit for Mr. Khan.

D.  THE GOVERNMENT DID NOT POINT TO ANY EVIDENCE THAT PROVED MR. KHAN AGREED TO A CONSPIRACY.

*1. The Government abandoned its sufficiency of evidence argument because it lacked any references to the record or authorities.*

Federal Rules of Appellate Procedure 28(a)(8)(A) and 28(b) require an appellee's brief to contain the appellee's "contentions and reasons for them, with citations to the authorities and parts of the record on which the [appellee] relies." "Issues raised in a brief which are not supported by argument are deemed abandoned." *Crime Justice & America, Inc.*, 876 F.3d at 978 (internal quotation marks omitted) (quoting *Leer*, 844 F.2d at 634). *See Badgley v. United States*, 957 F.3d 969, 978–79 (9th Cir. 2020) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived.") (internal quotation marks omitted) (quoting *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010)). *See also Kuba*, 387 F.3d at 855 n.5 (explaining appellant's requirement to back contentions with reasons and citations to authorities and record also applies to appellees) (citing Fed. R. App. Proc. 28(b)).

Here, the Government did not explain how its evidence supported its allegations that there was a conspiracy to defraud USCIS or that Mr. Khan agreed to a conspiracy. The Government's only citation to the record in its entire sufficiency of evidence argument is to 3-ER-554–55, (Answer at 38), which does not offer any substance to the Government's argument because it is merely a transcript of the

Prosecution reminding the jury what evidence the Government presented. 3-ER-544–55. The Government improperly left it up to this Court to infer the Government's argument. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (determining that the court should not have to "manufacture" a party's argument).

For instance, the Government merely asserted that its witnesses proved "Khan and Soriano worked together to submit a fraudulent CW-1 petition," and that "Khan manufactured a fraudulent third-party contract submitted with the petition . . .." (Answering Brief at 38–39). But none of these claims are supported with analysis or citations to the record or the law. (*Id.*)

The Government therefore abandoned its argument by not supporting its claims with any analysis or citations to authorities or the record. *See Crime Justice & America, Inc.*, 876 F.3d at 978.

> ## 2. Mr. Khan's Opening Brief explained why the Government's evidence could not support the lower court's verdict.

Even if the Government's sufficiency of evidence argument is not waived, the Government would still not be able to support its own claims. In *United States v. Ionutescu,* 752 F. Supp. 2d 1091, 1100–02 (D. Ariz. 2009), a district court in this circuit held that the Government had insufficient evidence to prove a defendant was connected to a conspiracy when the Government could only prove that the defendant met with known conspirators and may have committed an illegal act that furthered the conspiracy. Although the defendant may have discussed illegal activities related

14

to the conspiracy with alleged co-conspirators, the *Ionutescu* court reasoned that there was no indication that the defendant knew about a conspiracy or intended to participate in one. *Id.* at 1100–01. While the defendant may have committed an illegal act that furthered the conspiracy, there was no proof that the defendant knew the illegal act would help further the conspiracy. *Id.* at 1101–02 (citing *United States v. Licciardi*, 30 F.3d 1127, 1132 (9th Cir. 1994)).

Here, the Government's evidence is even weaker than the prosecution's evidence in *Ionutescu*. Not only is the Government's evidence too vague to prove Mr. Khan participated in a conspiracy, here the evidence cannot prove that a conspiracy existed at all. (Opening Brief at 53–60). Unlike *Ionutescu*, the Government did not have any evidence that any member of the alleged conspiracy agreed to do something illegal. (*Id.* at 55–58). *See Ionutescu*, 752 F. Supp. 2d. at 1097 (Defendant did not challenge that conspiracy existed between other Defendants).

Like *Ionutescu*, the Government's circumstantial evidence was too attenuated to prove the Mr. Khan participated in a criminal conspiracy. *See Ionutescu,* 752 F. Supp. 2d at 1100–02. First, none of the Government's witnesses gave specific dates about when Mr. Khan allegedly met with Mr. Hosen and Ms. Soriano. (Opening Brief at 55–58). Second, while the Purported Contract may have had Mr. Khan's signature and was used in RES' CW-1 petition, the Government had no proof Mr.

Khan signed this document for the purpose of furthering a conspiracy, just as the *Ionutescu* defendant's actions that incidentally furthered a conspiracy did not prove the defendant willfully participated in a conspiracy. (*Id.* at 58–59). *See Ionutescu*, 75 F. Supp. 2d. at 1101–02. Here, even assuming *arguendo* that Maralouisa Ernest's testimony proved Mr. Khan signed the Purported Contract, the testimony did not establish that the Purported Contract was signed to help a conspiracy to defraud USCIS. (Opening Brief at 58). Further, the Government did not prove that the Purported Contract even had a role in the conspiracy because the Purported Contract predated RES' CW-1 petition and Officer Verma did not establish how the Purported Contract was the kind of contract that would substantiate an employee-employer relationship for a CW-1 petition. (*Id.* at 59).

While the Government's Answering Brief is replete with assertions that it proved each of the required elements for the lower court's verdict, the Government failed to point to any evidence that supported these assertions. Because no rational juror could infer beyond reasonable doubt that Mr. Khan agreed to a conspiracy, the lower court had insufficient evidence to support its verdict.

III. CONCLUSION

For the foregoing reasons, this Court should vacate the conviction against Mr. Khan and enter a judgment of acquittal. Alternatively, this Court should vacate Mr. Khan's conviction and remand for a new trial.

Respectfully submitted this 7th day of March, 2024 (PDT).

//s// Bruce Berline
P.O. Box 5682
Saipan, MP 96950
Counsel for Defendant-Appellant
Halim Khan

**CERTIFICATE OF COMPLIANCE**
PURSUANT TO FED. R. APP. P. 32(A)(7)(C) AND CIR. R. 32-1
APPEAL NO. 20-480

I certify that, pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the foregoing reply brief is proportionately spaced, has a typeface of 14 points and contains less than 7,000 words. Specifically, the reply brief contains approximately 3,822 words as determined by the word count feature contained in Microsoft Word.

Dated this 7th day of March, 2024 (PDT).

<u>//s// Bruce Berline</u>
BRUCE BERLINE, ESQ.
P.O. Box 5682
Saipan, MP 96950
Counsel for Defendant-Appellant
Halim Khan

**PROOF OF SERVICE**

Pursuant to Circuit Rules 25-5 and 30-1, I certify that this day the foregoing APPELLANT'S REPLY BRIEF was filed electronically and served on the Court and Appellee vis CM/ECF.

Dated this 7th day of March, 2024 (PDT).

//s// Bruce Berline
BRUCE BERLINE, ESQ.
P.O. Box 5682
Saipan, MP 96950
Counsel for Defendant-Appellant
Halim Khan